Jack FOWLER, Defendant-Petitioner,

v.

The HAPPY GOODMAN .FAMILY and
Top Billing Inc.,
Respondents-Plaintiffs.

Supreme Court of Tennessee.

Dec. 29, 1978.

Tom H. Williams, Jr., Nashville, for de-
fendant-petitioner.

Aubrey B. Harwell, Jr., Thomas H. Dundon, Nashville, for respondents-plaintiffs.

## OPINION

HARBISON, Justice.

In this action the trial court rendered summary judgment against petitioner for fees owed by him to the respondents under contracts for musical performances. The Court of Appeals affirmed. Although other defenses were presented in those courts, the only question raised in the petition for certiorari is whether petitioner offered sufficient evidence in opposition to the motion for summary judgment to create a genuine fact issue on his claim of fraud in the inducement.

After careful consideration of the record, we affirm the judgment of the courts below.

Respondents, The Happy Goodman Family, are a group of ten performing musicians. Respondent Top Billing, Inc., is their booking agent, receiving a percentage of their fees for performances. Petitioner is engaged in promoting musical concerts. On May 14, 1975, he contracted with Top Billing, Inc., to be sole representative of the latter for personal appearances of The Happy Goodman Family within a four-state area. Petitioner agreed to guarantee a minimum of fifty personal appearance for The Happy Goodman Family in the prescribed territory at a set price for each engagement. The fifty performances were to be promoted between the dates of July 1, 1975 and June 30, 1976. The promotion contract itself is not at issue in this litigation.

Subsequent to the execution of this agreement, petitioner entered into five separate contracts with The Happy Goodman Family for performances in his franchised territory, to be given on dates between October 30 and November 28, 1975. Petitioner was to pay to the performers and their agent a specified fee for each of these engagements.

The first of these contracts was entered into on June 18, 1975. The other four were executed a number of weeks later, their respective dates being September 3, 9, 12, and 30, 1975.

This action was instituted by respondents on May 14, 1976, alleging that The Happy Goodman Family had given each of the performances required by the September contracts, and that they had been ready, willing and able to give the other performance, called for by the June 18 contract, but that this engagement had been cancelled by petitioner without just cause. Respondents alleged that they had been paid nothing under any of the contracts.

In his answer, petitioner admitted signing the contracts, admitted that nothing had been paid under any of them, conceded that four of them had been performed by respondents and admitted cancellation of the fifth. He denied any breach on his part. In addition to questioning the jurisdiction of the Tennessee courts, he raised several defenses on the merits, including lack of consideration. He also alleged misrepresentation and fraud in the inducement, without elaboration or statement of any supporting fact.

Respondents filed a motion for a more definite statement with respect to the allegations of fraud and misrepresentation, citing Rule 9.02, Tennessee Rules of Civil Procedure, which states that "the circumstances constituting fraud or mistake shall be stated with particularity." This motion was sustained. In response thereto, on October 4, 1976, petitioner filed an amended and supplemental answer, detailing a number of representations allegedly made to him by respondents in connection with the May 1975 contract and the subsequent entertainment contracts. Petitioner pled "on information and belief" that all of these representations had been false and that they were calculated to mislead him. The representations consisted of promises of future conduct by respondents, rather than past or existing facts.[1]

---

1. Primarily the alleged representations consisted of promises to protect petitioner from adver-

tising by a former promoter and to make financial concessions to him by reduction of future

No further challenge to the sufficiency of the pleadings was made. On June 15, 1977, more than eight months after the amended answer had been filed, respondents moved for summary judgment in the amount of the contract fees. This motion was supported by affidavits which generally reiterated the allegations of the complaint.

The motion for summary judgment was not acted upon until August 24, 1977, an interval of more than two months after its filing. The only defense to the motion interposed by petitioner was a single affidavit, executed by him, and filed on the day of the hearing. Although the case had by then been pending for over a year, if petitioner took advantage of any of the various pre-trial procedures available under the Tennessee Rules of Civil Procedure, such as depositions, interrogatories or requests for admissions, the results of none of them were filed. Nor were there supporting affidavits from any person other than himself.

■ A motion for summary judgment goes to the merits of the litigation. One faced with such a motion may neither ignore it nor treat it lightly. As stated in Rule 56.05, T.R.C.P.:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

■ Petitioner was faced with a motion for summary judgment upon five contracts which he had admittedly executed, and four of which he conceded had been performed by the adverse parties. It was therefore incumbent upon him, in order to establish a

defense of fraud in the inducement, to come forward with specific factual information or run the risk of being cast in judgment.[2]

Rule 56.05 expressly provides:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

The affidavit filed by the petitioner does not meet these criteria. It details a number of representations and promises allegedly made to him by respondents when the May 14, 1975 promotion contract was executed. There is no reference to any further communication or conference with respondents until "late July of 1975"—a date subsequent to the execution of the first of the performance contracts now in issue, that agreement having been signed on June 18.

The affidavit alleges further representations made by respondents at the unspecified date in July—several weeks before the other four contracts were signed. The affidavit then concludes:

"*Upon the information I have, I believe that all of the aforementioned representations of the plaintiffs were made by them knowing that they were false and they were intended to mislead me.*" (Emphasis added).

■ The sources of the "information" upon which petitioner based this "belief" are not revealed. Petitioner's own belief does not constitute "such facts as would be admissible in evidence" as required by Rule 56.05, *supra*. Nor does the affidavit show "affirmatively that the affiant is competent to testify to the matters stated therein," as required by the Rule.

■ Tennessee has long adhered to the rule that in order for a fraudulent misrepresentation to be actionable, it must consist

performance fees or the making of percentage agreements.

2. Petitioner filed no counterclaim for rescission or other affirmative relief. He simply interposed a defense of fraud in avoidance of the contracts, predicated upon deliberate misstatements of intention and promises of future conduct, as previously mentioned.

of a statement of an existing or past material fact, made with knowledge of its falsity or with reckless disregard of the truth. Although a minority view, the rule established by the cases in this state has been that a misrepresentation of intention or a promise without intent to perform is legally insufficient to support a claim for rescission or damages. *See A. Landreth Co. v. Schevenel,* 102 Tenn. 486, 52 S.W. 148 (1899). This rule has been adhered to in a number of decisions, including the fairly recent case of *Bolan v. Caballero,* 220 Tenn. 318, 417 S.W.2d 538 (1967).

In the latter case, however, this Court indicated that it would be willing to consider adopting the rule followed in a majority of jurisdictions with respect to the subject "in a proper case where justice demands . . . ." 220 Tenn. at 326, 417 S.W.2d at 541.

Under the majority view, in order for actionable fraud to be based upon a promise of future conduct, it must be established that such a promise or representation was made with the intent not to perform. A statement of intention must be false and the intention not actually held. *See* Prosser, *Law of Torts* § 109, at 728–730 (4th ed. 1971); *Restatement (Second) of Torts* § 530 (1977); Annot., 51 A.L.R. 46 (1927); 68 A.L.R. 635 (1930); 91 A.L.R. 1296 (1934); 125 A.L.R. 879 (1940).

■ We recognize that where a claim of fraud is presented, ordinarily only upon a full trial of the action can the issue properly be developed. As a general rule, summary judgment is not an appropriate procedure for the disposition of such an issue. *See Long v. State Farm Fire & Casualty Co.,* 510 S.W.2d 517, 519 (Tenn.App.1974).

Nevertheless, it is incumbent upon the party asserting fraud, when confronted by a motion for summary judgment, to produce some competent and material evidence legally sufficient to support his claim or defense. The affidavit of petitioner in the present case does not contain any evidence which would sustain a defense of fraud in the inducement under the existing Tennessee rule referred to above.

■ Apparently conceding this, petitioner strongly urges us to use the present case as a vehicle for changing the rule with reference to "promissory fraud" and to adopt the view followed in the majority of other jurisdictions. However, we are of the opinion that the affidavit, tested by the majority rule, is legally insufficient and wholly fails to establish by any competent and material evidence that the promises and representations of respondents as to their future conduct were made without any intention on their part to perform. Their failure to perform is sufficiently stated, but only petitioner's subjective belief and his unspecified "information" are advanced in support of the claim of fraudulent intent to deceive and not to undertake performance.[3]

Absent any admissions in the respondent's pleadings which would support a claim of inducing fraud under either the majority or the minority view, petitioner was obligated to take depositions, demand answers to interrogatories, submit requests for admissions or, at a minimum, to file supporting affidavits containing facts which, in the language of Rule 56.05, "would be admissible in evidence" in support of his contention. His subjective belief and his other unspecified information are legally insufficient.

For these reasons, the judgment of the Court of Appeals is affirmed at the cost of petitioner. The cause will be remanded to the trial court for enforcement of the judgment.

---

**3.** "The intention of the promisor not to perform an enforceable or unenforceable agreement cannot be established solely by proof of its nonperformance, nor does his failure to perform the agreement throw upon him the burden of showing that his nonperformance was due to reasons which operated after the agreement was entered into. The intention may be shown by any other evidence that sufficiently indicates its existence, as, for example, the certainty that he would not be in funds to carry out his promise." *Restatement (Second) of Torts* § 530, Comment (*d*) (1977).

HENRY, C. J., COOPER and FONES, JJ., and HUMPHREYS, Special Judge, concur.