**STEED REALTY, d/b/a Sardis Country Estates, Frank Joe Steed, Plaintiffs/Appellants,**

v.

**Deborah and Daruish OVEISI, Defendants/Appellees.**

**STEED REALTY, d/b/a Sardis Country Estates, Frank Joe Steed, Plaintiffs/Appellants,**

v.

**Daruish OVEISI, Defendant/Appellee.**

**Dale R. WARDLOW, Nola J. Wardlow, Melvin Hill, Amanda C. Hill, and John W. Ariris, Tom and Charlotte Diane Sullivan, Plaintiffs/Appellants,**

v.

**Frank Joe STEED, Steed Realty Company, d/b/a Sardis Country Estates, Defendants/Appellees.**

**STEED REALTY COMPANY, d/b/a Sardis Country Estates, Plaintiffs/Appellants,**

v.

**J.B. WOLFE, Defendant/Appellee.**

Court of Appeals of Tennessee, Western Section, at Jackson.

May 8, 1991.

Permission to Appeal Denied by Supreme Court Sept. 3, 1991.

Julie Dichtel Byrd, Memphis, for plaintiffs/appellants.

Alex Saharovich, Memphis, for defendants/appellees.

HIGHERS, Judge.

This appeal arises from a dispute over the sale of real estate in Panola County, Mississippi. Several cases were consolidated and the action was heard at a bench trial in the Circuit Court at Shelby County, Tennessee. The seller of the real estate alleges that certain purchasers defaulted on their promissory notes for the purchase of the land. The purchasers allege breach of contract, fraud, unfair and deceptive acts in violation of the Tennessee Consumer Protection Act and misrepresentation. The trial court held in favor of the purchasers and the seller appeals.

This case is a consolidation of four separate actions. The first three actions were

brought by the seller, Frank Joe Steed (hereinafter Steed) in the General Sessions Court at Shelby County following foreclosure of the real estate interests of three of the purchasers when they defaulted on their promissory notes. The judgments were appealed *de novo* to the Circuit Court and the purchasers each brought a counterclaim against Steed alleging breach of contract, fraud, violation of the Tennessee Consumer Protection Act, and misrepresentation. The fourth action was an original complaint brought in Circuit Court by seven other purchasers of real estate against Steed alleging the same causes of action as in the counterclaims. Generally, the purchasers claim that they had been told by Steed or one of his agents that Sardis Country Estates, where the land is located, is a subdivision to be built in the future, and in keeping with that idea, the roads providing ingress and egress to the purchased lots would be graveled to Panola County standards, electricity lines would be run along the roads, and access to a water source would be provided for each lot.

A two-day bench trial was held in which Steed presented his case *pro se*. The trial court dismissed all three actions originally brought by Steed in General Sessions to collect on the purchasers' promissory notes. In addition, the court ordered that a judgment be entered against Steed, naming individual amounts to be awarded according to each purchaser's damages, in an amount totaling over $100,000. The trial court also enjoined Steed from knowingly making any representations or false promises in connection with his business in the sale of real estate. The court further held that the "contracts for deed" and the promissory notes executed pursuant thereto are void and to be set aside and the purchasers are ordered to tender to Steed quit claim deeds to the real estate in question, pursuant to Steed paying the judgment. Steed appeals on issues of jurisdiction, the statute of limitations, promissory fraud, the Tennessee Consumer Protection Act and parol evidence. We affirm the trial court.

### I.

Steed asserts that the trial court erred in ruling that he waived his statute of limitations defense because he failed adequately to plead the defense. Steed did not raise the statute of limitations defense in his original answer. Prior to the commencement of the trial, upon Steed's request, the court stated that it would allow Steed to amend his answer to include two defenses, one regarding parol evidence and the other regarding the Tennessee Consumer Protection Act. However, in his amended answer, Steed also pleaded the statute of limitations as a defense, which the court had not given him permission to include. On the second day of trial, when Steed tried to argue the statute of limitations defense, the court stated that it was too late to raise that defense because Steed had not mentioned it when he asked the court for leave to amend his answer.

The rule in Tennessee is that if the statute of limitations is not pleaded within the proper time and in the proper manner, it is deemed waived and cannot be relied upon as a defense. *Denny v. Webb*, 199 Tenn. 39, 281 S.W.2d 698 (1955). T.R.C.P. Rule 12. Because Steed did not have the court's permission to plead statute of limitations, the defense was not pleaded in the proper manner, and the court did not err in disallowing the defense. Because Steed, in effect, did plead the defense in his amended answer, which was filed with the court, it could be said that he did plead the statute of limitations. However, in Tennessee it is a matter of discretion whether the court will allow the filing of a plea of the statute of limitations after the trial has begun. *Nunnelly v. Southern Iron Co.*, 94 Tenn. 397, 29 S.W. 361 (1895). We find that the trial court did not abuse its discretion in disallowing the plea because Steed had the opportunity to ask the court for a leave to amend his answer to include the defense prior to the commencement of the trial. Therefore, we affirm the trial court.

### II.

Steed next asserts that the trial court erred in finding subject matter jurisdiction to exist regarding the Tennessee

Consumer Protection Act claims. Steed points out that there are two classes of purchasers: Those who reside in Tennessee and those who reside in Mississippi. Generally, Steed did three things in Tennessee which related to the sale of the real estate located in Mississippi. He advertised through both press and broadcast media in Tennessee, he held the real estate closings in Tennessee, and he transacted business from his office in Tennessee.

The Tennessee Consumer Protection Act states:

**Purposes.**—The provisions of this part shall be liberally construed to promote the following policies:

. . . .

(2) To protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within the state.

T.C.A. § 47–18–102(2). The Act defines "trade" or "commerce" as follows:

(9) "Trade," "commerce," or "consumer transaction" means the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated.

T.C.A. § 47–18–103(9). We find that Steed's activities are governed by the Act because he has conducted trade and commerce in part in Tennessee by advertising and closing his real estate deals in this state. We can also look to the Act to determine which courts have jurisdiction. T.C.A. § 47–18–109(a)(2) states that "[t]he action may be brought in a court of competent jurisdiction ... in the county in which such person ... conducts, transacts, or has transacted business...." We find that Steed has conducted or transacted business in Tennessee by advertising his real estate and subsequently closing his real estate deals in this state. In addition, he has an office in Tennessee from which he conducts his business. Therefore, we find that the trial court has jurisdiction.

Steed asserts that some of the real estate sales in question were not connected with Tennessee, and therefore, the court does not have jurisdiction over the specific claims of those purchasers. For example, Mr. Farris is a purchaser who is a resident of Mississippi. Mr. Farris learned about the property for sale in an advertisement sent through the mail, but he did not testify as to where the advertisement originated. However, he did testify that the closing was held at Steed's attorney's office in Tennessee, and this transaction does give the court jurisdiction over the sale.

■ In addition, Steed suggests that the reach of the Act to purchasers who are not residents of Tennessee is a matter of first impression with this Court. There is no requirement that one be a resident of a particular state in order to bring an action in that state's courts, and specifically, no such requirement is stated in the Tennessee Consumer Protection Act. See T.C.A. § 47–18–101, et seq.

Steed also asserts that Mr. and Mrs. Hill, who are purchasers in this action and residents of Tennessee, did not purchase the real estate pursuant to any transaction that took place in Tennessee. However, T.C.A. § 47–18–109(a)(2) does not require that the action be brought where the alleged unfair or deceptive act took place. Rather, that is one of several forums in which the consumer may bring the action. The statute states that the action may be brought "in the county in which such person ... conducts, transacts, or has transacted business...." T.C.A. § 47–18–109(a)(2). Having previously found that Steed did conduct and transact business in Tennessee, the court did not err in asserting jurisdiction over the Hills' claims along with the claims of the other purchasers involved in this action.

Steed further argues that the trial court erred in failing to grant Steed's motion to dismiss for lack of subject matter jurisdiction over the Mississippi purchasers. Steed bases this argument on the wording of T.C.A. § 47–18–109(a)(2). He specifically interprets the phrase "if the person cannot be found in any of the foregoing locations,

in the county in which such person can be found," to mean that an action may only be brought under the Act in the county where service of process is carried out. First, we note that the question of where a defendant is served a summons is an issue of personal jurisdiction rather than subject matter jurisdiction. Second, when interpreting a statute, we must look to the ordinary meaning of the language used, when read in the context of the entire statute and without any forced or subtle construction to limit the import of that language. *See Worrall v. Kroger Co.*, 545 S.W.2d 736 (Tenn.1977). In context, the paragraph reads as follows:

(2) The action may be brought in a court of competent jurisdiction in the county where the alleged unfair or deceptive act or practice took place, is taking place, or is about to take place, or in the county in which such person resides, has his principal place of business, conducts, transacts, or has transacted business, or, if the person cannot be found in any of the foregoing locations, in the county in which such person can be found.

T.C.A. § 47–18–109(a)(2). Because we have found that Steed conducted and transacted business in Tennessee, we need not look any further and jurisdiction is proper. We affirm the trial court in denying Steed's motion to dismiss for lack of subject matter jurisdiction.

### III.

Steed also argues that the trial court erred in finding that promissory fraud is a viable theory of law in Tennessee sufficient to vitiate consent to a contract.

The Tennessee Supreme Court has never formally adopted the doctrine of promissory fraud, although the elements necessary for that type of fraud have been designated and the Court of Appeals has successfully applied the doctrine. *See Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585 (Tenn. App.1980). In *Bolan v. Caballero*, 220 Tenn. 318, 417 S.W.2d 538 (1967), the court first addressed the issue when it stated that it would consider adopting the doctrine of promissory fraud "in the proper case where justice demands." *Id.* at 326, 417 S.W.2d at 541. In that case the court upheld the old Tennessee rule that misrepresentations in order to be fraudulent must be of facts at the time or previously existing, and not promises for the future. *Id.* On that basis the court found that no fraudulent promises had been made. In *Fowler v. Happy Goodman Family*, 575 S.W.2d 496 (Tenn.1978), the court recognized the majority rule of promissory fraud, stating that "[u]nder the majority view, in order for actionable fraud to be based upon a promise of future conduct, it must be established that such a promise or representation was made with the intent not to perform." *Id.* at 499. The court applied this rule to the facts of the case, but found that there was insufficient evidence to support a claim for promissory fraud. Later, in *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585 (Tenn.App. 1980) the Court of Appeals applied the same rule and found sufficient evidence to support promissory fraud:

It is apparent from these cases that the Tennessee Supreme Court will adopt the majority rule if the party alleging promissory fraud produces evidence supporting the allegation. The evidence in the instant case supports such an allegation. Plaintiff's recovery therefore can be predicated on misrepresentation of a material existing fact and on misrepresentation of intention or promissory fraud.

*Id.* at 590.

Steed states that the holding in *Brungard* is somehow limited by the court's later holding in *Farmers & Merchants Bank v. Petty*, 664 S.W.2d 77 (Tenn.App. 1983). However, in that case the court merely reiterates the standard set forth in *Fowler v. Happy Goodman Family, supra. See Farmers & Merchants Bank v. Petty*, 664 S.W.2d at 79–80. In *Farmers & Merchants Bank*, the court did not find sufficient evidence to support a claim of promissory fraud under the *Fowler* standard and the claim was denied. *Id.* at 81. *See also Maddux v. Cargill, Inc.*, 777 S.W.2d 687 (Tenn.App.1989). The *Farmers*

*& Merchants Bank* court notes that the standard for promissory fraud, as set forth in *Fowler*, is a stringent one and the court would have to re-write Tennessee law in order to make the facts of the case before it support the claim of promissory fraud. *Farmers & Merchants Bank*, 664 S.W.2d at 81.

In all civil actions tried by a court without a jury, review by the appellate court of the trial court's findings of fact shall be *de novo* upon the record, accompanied by a presumption that the findings of the trial court are correct unless the preponderance of the evidence is otherwise. T.R.A.P. 13(d). The trial court made extensive findings of fact in its Memorandum Opinion. The trial court found:

> At the time these promises or representations were made to the Defendants, they were made solely to induce the Defendants to enter into a contract to purchase a lot or lots and Steed had no intention of performing his promises within the foreseeable future, if ever. Steed's credibility at the trial was substantially impeached by his criminal record of fraudulent behavior as well as by inconsistencies in his testimony and his lack of candor. Evidence of his intention not to perform his promises is contained in his failure to make any improvement in the road, or provide water or electricity to the property even after several years of repeated promises, and his failure to present any evidence of any reason why he did not keep his promises. No evidence was presented of any economic hardship or other condition rendering him unable to perform. The evidence shows that he is still in business, has a number of investments, and made the same representations to a number of customers. Even today, the roadway, electricity and water condition remains the same without any evidence that Steed intended to perform but was prevented from doing so by some circumstances beyond his control.

Upon reviewing those findings and the record we hold that the trial court did not err in applying the doctrine of promissory fraud. The standard for proving promissory fraud as stated in *Fowler v. Happy Goodman Family, supra,* is that a representation must be made with the intent not to perform.

The purchasers cite various portions of the transcript to prove that Steed made representations with the intent not to perform. There is testimony that Steed represented to the purchasers that the roads would be graveled and maintained to Panola County standards and there is ample evidence that some of the roads have never been graveled and maintained to Panola County standards. At least one purchaser testified that he would not have bought the real estate if he had known that the roads would not be built and maintained. Steed testified that he put two inches of gravel on the roads, but taking care of the gravel roads is a problem. He also stated that he only maintained the roads for a certain amount of time. Steed represented to the purchasers that he would build and gravel the roads to Panola County standards and he would be responsible for their maintenance. Steed testified that he had talked to county officials about the county taking over the maintenance of the roads after letting them sit for a number of years. The evidence establishes that Steed never intended to build and gravel all of the roads to Panola County standards and to be responsible for their continued maintenance at those standards.

The trial court did not specify road maintenance as the only issue when it rescinded the contracts on the grounds of promissory fraud. There is other evidence in the record to support promissory fraud. The purchasers testified that Steed represented that he would provide water and electricity hook-ups and they purchased the real estate in reliance on that representation. However, Steed testified that he did not tell the purchasers that there would be utility hook-ups, and he showed no intention to provide utilities because he is only obligated to provide those items mentioned in the contract.

The misrepresentations as to the condition of the roads and the water and electricity hook-ups misled the purchasers into

thinking that Steed would improve the real estate that they were purchasing. Most of the purchasers were buying the property for resort or retirement purposes and it is evident from the record that they are unable to build on the real estate because the roads are in such bad condition and because they have no access to water or electricity.

There have been other misrepresentations as well. Several purchasers testified that Steed referred to the property as a subdivision implying that this would be a community where people would build houses and live. One purchaser testified that Steed promised to build a club house which would be turned over to the landowners once the subdivision was completed. The purchasers were influenced to buy these lots by the pretty picture Steed painted when he told them of the improvements to come. Steed never intended to make these improvements as indicated by his testimony that the contracts speak for themselves and he is not obligated outside the contracts. Following the application of the doctrine of promissory fraud in *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585 (Tenn.App.1980) we find that the doctrine of promissory fraud is appropriate in this case because Steed did not have the present intention to carry out certain promises at the time that he made them. We affirm the trial court's rescission of the contracts on that basis.

### IV.

■ Finally, Steed argues that the trial court erred in finding that he made a willful and/or knowing violation of the Tennessee Consumer Protection Act to justify doubling damages. The trial court held that Steed violated T.C.A. § 47–18–104(b)(26) (which is now (27) due to the 1990 amendment) which states that the following unfair or deceptive act or practice affecting the conduct of any trade or commerce is unlawful:

(27) Engaging in any other act or practice which is deceptive to the consumer or to any other person.

Section 47–18–104(b)(27). Steed's promising that the roads would be brought up to Panola County standards and that water and electricity hook-ups would be made available was a deceptive act which influenced the purchasers to buy the real estate. Under the Tennessee Consumer Protection Act, "[i]f the court finds that the use or employment of the unfair or deceptive act or practice was a willful or knowing violation of this part, the court may award three (3) times the actual damages sustained and may provide such other relief as it considers necessary and proper." T.C.A. § 47–18–109(a)(3).

Steed asserts that much like fraud, violations of the Tennessee Consumer Protection Act must be of a past or existing fact and not of future promises. Steed bases this assertion on the section of the Act which defines "knowingly":

(6) "Knowingly" or "knowing" means actual awareness of the falsity or deception, but actual awareness may be inferred where objective manifestations indicate that a reasonable person would have known or would have reason to know of the falsity or deception.

T.C.A. § 47–18–103(6). Having heretofore held that Steed is liable for promissory fraud because he did not intend to carry out the promises that he made when he made them, we also find that Steed "knowingly" violated the Tennessee Consumer Protection Act. It is indisputable that Steed knew that his promises of better roads and water and electricity hook-ups would make the real estate more valuable to the purchasers and could influence them to buy the real estate. Steed's knowledge of what was in the contract when he presented it to the purchasers is not in dispute. He knowingly deceived the purchasers into thinking that they were getting more than was stated in the contract and he subsequently relied on the contract to escape this obligation.

The Tennessee Consumer Protection Act provides for treble damages for those who have knowingly violated the Act. T.C.A. § 47–18–109(a)(3). The trial court found that it was appropriate to merely double the damages. Because we do not find that

the preponderance of the evidence is otherwise, we affirm the trial court.

## V.

Steed states that the trial court erred in allowing parol evidence to supplement and/or contradict the written contract. The trial court held that the parol evidence rule does not apply where consent to a contract is obtained by fraud (i.e. intentional misrepresentation reasonably relied upon), because in law no contract has, in fact, been made inasmuch as there has been no real consent by the injured parties. The trial court relied on *Brungard v. Caprice Records, Inc.,* 608 S.W.2d 585 (Tenn. App.1980), which states that the parol evidence rule has no application to a case involving a fraudulent misrepresentation which induces the contract. *Id.* at 588, *citing Haynes v. Cumberland Builders, Inc.,* 546 S.W.2d 228, 231 (Tenn.App.1976). Generally, the parol evidence rule applies to suits on a contract, but not to a case involving a fraudulent misrepresentation which induces the contract. In this case, the trial court found that no valid contract was entered into and, therefore, the purchasers could not recover on the theory of breach of contract. Because the trial court gave no recovery on the breach of contract theory, we find that the parol evidence rule does not apply and this issue is without merit.

The trial court is therefore, affirmed on all issues in this appeal. Costs are assessed to Steed.

TOMLIN, P.J. (W.S.), and FARMER, J., concurs.