IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 29, 2001 Session

### JAMES E. RAY D/B/A RAY'S GULF STATION
v.
### BILLY S. WILLIAMS, INDIVIDUALLY AND AS PRESIDENT OF U-HAUL CO. OF MEMPHIS, U-HAUL COMPANY OF MEMPHIS, U-HAUL INTERNATIONAL, INC., JOE SHOEN, PRESIDENT/CHAIRMAN OF THE BOARD

An Appeal from the Circuit Court for Lauderdale County
No. 4774, Jon Kerry Blackwood, Judge

_____

No. W2000-03000-COA-R3-CV - Filed May 9, 2002

_____

This case involves the doctrine of promissory fraud. The plaintiff service station owner claimed that the defendant rental trailer company fraudulently induced him into entering into a contract to operate a rental trailer dealership by orally assuring him that his dealership rights would be exclusive in Ripley, Tennessee. At the bench trial below, the trial court admitted parol evidence of the oral assurances to show fraud in the inducement of the dealership contract. Based on that evidence, the trial court held that the rental trailer company had committed promissory fraud and awarded damages to the plaintiff service station owner. The rental trailer company now appeals. We affirm the finding of promissory fraud, but reverse in part the damage award.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed in part and Reversed in part

HOLLY K. LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, J., AND ALAN E. HIGHERS, J., joined.

Michael G. McLaren and Michael R. McCusker, Memphis, Tennessee, for appellants Billy S. Williams, individually and as President of U-Haul Co. of Memphis, U-Haul Company of Memphis, U-Haul International, Inc., Joe Shoen, President/Chairman of the Board.

Herman L. Reviere, Ripley, Tennessee, for the appellee, James E. Ray d/b/a Ray's Gulf Station.

**OPINION**

This case involves the doctrine of promissory fraud. The Plaintiff/Appellee James E. Ray ("Ray") owned a family-operated service station business called Ray's Gulf Station in Ripley, Tennessee. In 1988, representatives from Defendant/Appellant U-Haul Company of Memphis ("U-Haul"), a rental trailer company, approached Ray and asked him to become a U-Haul dealer, operating out of his Gulf station. Ray agreed, and on July 24, 1990, he signed a dealership contract with U-Haul.[1] Ray did not read the contract prior to signing it. Under the contract, either party could terminate the agreement "with or without cause on thirty (30) days written notice." Over the next several years, Ray took steps to facilitate the U-Haul business, such as adding diesel pumps and blacktopping an additional parking area. The parties operated under the dealership contract until 1996.

In early 1996, Ray learned that U-Haul intended to open a second dealership in Ripley. Shortly thereafter, Ray terminated his agreement with U-Haul. On April 30, 1996, Ray sued defendants U-Haul, its president, Billy Williams, U-Haul International, and its president/chairman of the board, Joe Shoen (collectively referred to as "U-Haul"), alleging fraud, misrepresentation or mistake, as well as breach of contract. In April 1998, following the death of his wife, Ray sold his service station business.

The trial court held a bench trial in this case on September 15, 2000. At the trial, Ray testified that two U-Haul representatives fraudulently induced him into entering into the contract by orally promising him that his dealership would operate exclusively in Ripley unless the population in that city exceeded 10,000. Two other witnesses, Ray's sons Thomas and Michael Ray, on Ray's behalf testified, that the U-Haul representatives made such representations. In reliance on U-haul's assurances, Ray asserted, he signed the dealership contract and spent over $6,000 in improvements to his service station to accommodate the U-Haul business. Ray argued that, based on U-Haul's fraudulent inducement, he was entitled to recover for the amount spent improving his station, the amount he would have received in commissions from the U-Haul business, and an appropriate amount for his loss of business due to the termination of his U-Haul dealership.

At the trial, U-Haul denied having made any oral representations regarding exclusivity. U-Haul also maintained that evidence of any oral agreement between the parties was precluded under the parol evidence rule and was therefore inadmissible to alter the terms of the written contract. U-Haul noted further that the contract provides that all amendments to the contract must be in writing, and that the written terms "supercede[ ] any oral promises, agreements, or warranties made by U-Haul or [Ray]." The only language pertaining to exclusivity in the contract was found in the sixth paragraph, which grants Ray "the nonexclusive limited license to use the trademark and name 'U-

---

[1]Initially, Ray's son, Michael Ray, signed the contract on behalf of the service station. After the first payment was made to Michael using his personal social security number, he realized that there may be some tax implications from the contract. Consequently, U-Haul allowed Ray himself to sign an identical superceding contract on behalf of the station.

Haul' in connection with his dealership."[2]  Under the terms of the contract, U-Haul argued, this language could not be altered by any contrary oral representation.  On the issue of damages, U-Haul argued that Ray would not be entitled to recover for any amounts he spent improving his station because he recouped the value of any such improvements when he sold his business in 1998.  In addition, U-Haul asserted that Ray could not recover for lost commissions or loss of business because either party could have terminated the contract with 30 days' notice.  U-Haul maintained that it would be speculation to assume that the U-Haul business would have continued through April 1998.

At the conclusion of the trial, the trial court issued a written order finding that the agents for U-Haul told Ray that he would have an exclusive dealership in Ripley so long as the population in Ripley did not exceed 8,000 to 10,000.  The trial court further held that U-Haul's oral representation was material and that it induced Ray to enter into the dealership contract.  The trial court concluded that the representation "was false and made with an utter disregard for the truth," because the agents who testified admitted that they had no authority to make such a representation.  As to the language in the dealership contract, the trial court found that the exclusivity language in the sixth paragraph, upon which U-Haul relied, "simply grant[ed] [Ray] the nonexclusive limited license to use the U-Haul trademark.  No provision in the contract specifically addresses the oral promise made to plaintiff that U-Haul would not grant another dealership in Ripley unless the population reached 8,000 to 10,000."  The trial court awarded Ray $6,016.91 in damages for the amount he spent in improving his station for U-Haul, and $16,100.00 in damages for loss of commissions from the termination of the contract through April 1998, when Ray sold his business, based on the amount of commissions from U-Haul that the station received in 1995.  The trial court declined to award Ray any damages for lost profits, finding that such an amount would be "at best speculative."  U-Haul now appeals from that order.

On appeal, U-Haul does not seek to reverse the trial court's credibility determinations with respect to the oral representations made by the U-Haul representatives.  *See Truan v. Smith*, 578 S.W.2d 73, 74 (Tenn. 1979).  U-Haul concedes that fraud creates an exception to the parol evidence rule.  *See Sanders v. First Nat'l Bank*, 114 B.R. 507, 517 n.5 (M.D. Tenn. 1990).  U-Haul claims, however, that the trial court erred in finding that U-Haul committed promissory fraud, based on *Fowler v. The Happy Goodman Family*, 575 S.W.2d 496 (Tenn. 1978).  On the issue of damages, U-Haul claims that, even if it had committed fraud in the inducement of the dealership contract, the trial court erred in awarding damages for the cost of improvements and the loss of commission.  Ray

---

[2] Paragraph 6 reads in pertinent part:

U-Haul promises and agrees . . . [t]o grant [Ray] the nonexclusive limited license to use the trademark and name "U-Haul" in connection with his dealership, provided that [Ray] shall not use the name "U-Haul" or the U-Haul logo in any advertisement, whether newspaper, telephone listing or otherwise, or in connection with his corporate or business name without the prior written consent of U-Haul.  Upon termination of this agency agreement, [Ray] shall immediately discontinue all use of the term "U-Haul" and surrender to U-Haul all equipment, signs, documents and other material bearing such trademark or name.

appeals as well, arguing that the trial court erred in declining to award him damages for loss of profits.

Because the trial below was a bench trial, we review the trial court's findings of fact "de novo upon the record . . . accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise." Tenn. R. App. P 13(d); *see Steed Realty v. Oveisi*, 823 S.W.2d 195, 200 (Tenn. Ct. App. 1991); *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 588 (Tenn. Ct. App. 1980). We review questions of law de novo, affording no presumption of correctness to the trial court's legal conclusions. *See State v. Levandowski*, 955 S.W.2d 603, 604 (Tenn. 1997); *Ridings v. Ralph M. Parsons Co.,* 914 S.W.2d 79, 80 (Tenn. 1996).

In this proceeding, Ray does not seek to enforce the contract. Rather, Ray asserts that U-Haul fraudulently induced him into entering into the contract, seeking damages on the theory of fraud. *See Brungard*, 608 S.W.2d at 588. The elements of an action based on fraud are:

> (1) an intentional misrepresentation with regard to a material fact, (2) knowledge of the representation['s] falsity--that the representation was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity, (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, and (4) that the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must "embody a promise of future action without the present intention to carry out the promise."

*Shahrdar v. Global Hous., Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998) (quoting *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990) (citations omitted)). Thus, Ray must show that the statements made by the U-Haul agents were untrue, that they were intentional and material, that the elements were made with the knowledge of or reckless disregard for their falsity, and that Ray relied on the statements to his detriment. In addition, Ray must show that the false statements were made "without the present intention to carry out the promise." *Id.* He must demonstrate the defendant's lack of present intent "by evidence other than subsequent failure to keep the promise or subjective surmise or impression of the promisee." *Farmers & Merch. Bank v. Petty*, 664 S.W.2d 77, 81 (Tenn. Ct. App. 1983); *see also Stacks*, 812 S.W.2d at 593 (holding that a defendant's subsequent failure to keep his promise is in and of itself insufficient to establish promissory fraud); *Oak Ridge Precision Indus. v. First Tennessee Bank Nat'l Ass'n*, 835 S.W.2d 25, 29 n.2 (Tenn. Ct. App. 1992) (same). Whether a defendant had the present intent to defraud another is a question of fact. *Keith v. Murfreesboro Livestock Mkt., Inc.*, 780 S.W.2d 751, 754 (Tenn. Ct. App. 1989).

In this case, the trial court found that each element of promissory fraud was satisfied. The trial court found that the agents for U-Haul represented to Ray that U-Haul would refrain from setting up another dealership in Ripley (i.e., give him an exclusive dealership) so long as Ray did a good job and the population of Ripley did not exceed 8,000 to 10,000. The trial court held that the representation was material to Ray, and that Ray relied on it in entering into the dealership contract. Further, the trial court found that Ray had relied on the statements to his detriment by making

improvements to his station to facilitate the U-Haul business. Most importantly, the trial court found that the representation was made "with utter disregard for the truth [because] the agent's own testimony revealed he had no authority to make such a statement."

U-Haul argues that Ray did not satisfy his burden of proof as to fraud based on the decision in *Fowler*. In that case, the Court noted that Tennessee had traditionally followed the minority view that "a misrepresentation of intention or a promise without intent to perform is legally insufficient to support a claim for rescission or damages." *Fowler*, 575 S.W.2d at 499. In other words, a claim of fraud could not be based on a defendant's promise as to future conduct. The *Fowler* court recognized the majority view that "in order for actionable fraud to be based upon a promise of future conduct, it must be established that such a promise or representation was made with the intent not to perform." *Id.* It expressed a willingness "to consider adopting the rule followed in a majority of jurisdictions with respect to the subject 'in a proper case where justice demands.' " *Id.* (quoting *Bolan v. Caballero*, 417 S.W.2d 538, 541 (Tenn. 1967)). The *Fowler* court declined to adopt the majority view in that case because the only evidence of fraud was the petitioner's opinion as stated in his affidavit.

Since *Fowler*, Tennessee courts have applied the doctrine of promissory fraud in cases where "justice demands." *See, e.g., Oak Ridge Precision Indus.*, 835 S.W.2d at 29 n.1 (citing *Fowler* and recognizing the courts "willingness to apply [the doctrine] for over a decade"); *Steed Realty*, 823 S.W.2d at 200 (applying the majority standard for proving promissory fraud); *Brungard*, 608 S.W.2d at 590 (recognizing a "trend towards the majority rule"). The doctrine has been rejected where the facts did not support a claim of fraud. *See, e.g., Stacks*, 812 S.W.2d at 592-93 (finding that the defendant's failure to keep his promise was insufficient to establish promissory fraud); *Farmers & Merch. Bank*, 664 S.W.2d at 81 (concluding that the facts did not present a case in which the Tennessee Supreme Court would adopt a rule of promissory fraud). A common thread among these cases is the view that promissory fraud is actionable when it can be established through competent evidence that the promise of future conduct was made with an intent not to perform. *See Steed Realty*, 823 S.W.2d at 199-200.

In the instant case, the trial court found that the statements made by the U-Haul agents were "false, and made with an utter disregard for the truth. Specifically, the agent's own testimony revealed he had no authority to make such a statement." U-Haul's primary claim on appeal is that the evidence was insufficient to show that the statements were made with the intent not to perform. The U-Haul agents who testified at trial both denied making the statements regarding exclusivity. The U-Haul agents also testified that they would not have had the authority to make such statements. Other witnesses, including Ray, testified that the statements were made. Thus, if either of the U-Haul representatives had made statements regarding exclusivity, then the statements must have been made with at least reckless disregard as to whether the promise could be kept. Under these circumstances, the trial court's finding that U-Haul committed promissory fraud is supported in the record.

U-Haul also argues that paragraph 6 of the written agreement addresses the subject of exclusivity, and that the written terms should prevail over any contradictory oral representations under the parol evidence rule and in accordance with the explicit terms of the contract. However, as U-Haul acknowledges, the parol evidence rule "has no application to a case involving a fraudulent misrepresentation which induces the execution of a contract." *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 231 (Tenn. Ct. App. 1976); *see Sanders*, 114 B.R. at 517 n.5. Consequently, the parol evidence rule is inapplicable in this case. Second, as noted by the trial court, paragraph 6 of the written contract simply grants Ray the nonexclusive limited license to use the U-Haul trademark. It does not address the exclusivity of Ray's dealership in Ripley, and does not contradict the oral representations made by the U-Haul agents. Therefore, the trial court's finding of promissory fraud is affirmed.

U-Haul next contends that, even if the finding of promissory fraud is not reversed on appeal, the trial court erred in awarding damages to Ray for his expenses incurred in improving his service station to facilitate the U-Haul business and for his loss of prospective commissions. Where a party is injured by fraud, he "should be compensated for the actual injuries sustained by placing him or her in the same position he or she would have been had the fraud not occurred." *Harrogate Corp. v. Sys. Sales Corp.*, 915 S.W.2d 812, 817 (Tenn. Ct. App. 1995); *see Shahrdar*, 983 S.W.2d at 238 (citing *Blasingame v. American Materials, Inc.*, 654 S.W.2d 659, 665 (Tenn. 1983)). The party alleging fraud bears the burden of proving damages. *Harrogate Corp.*, 915 S.W.2d at 817.

In this case, Ray has maintained that, had the fraud not occurred, he would not have entered into the dealership contract with U-Haul. Because he entered into the contract, however, Ray incurred $6,016.91 in expenses in improving his service station to facilitate his obligations as a U-Haul dealer. The trial court found that the diesel tanks and extra blacktopping were not necessary for the regular service station business, and that Ray would not have made these improvements but for the dealership contract with U-Haul. U-Haul asserts on appeal that Ray should not recover this amount because he recouped these expenses when he sold his service station. At trial, Ray testified that he sold his service station, his nearby home, his accountant's office, and a large storage area for a total price of $220,000. He indicated that the total sales price was "chicken feed" and that he "really gave [the property] away." U-Haul offered only its bare assertion, with no evidence to support its claim that Ray received any extra value for his business because of the improvements made for U-Haul. Thus, because the record contains no evidence to show that Ray recouped the amounts he spent on the improvements made for U-Haul, this element of the damage award is affirmed.

U-Haul also appeals the award of damages to Ray to compensate him for approximately two and one half years of commissions that he would have received from the time that he terminated the dealership contract until the time he sold his service station in April 1998. An award of damages for such lost commissions is inconsistent with the theory of recovery asserted by Ray. Ray seeks to disavow the contract based on a theory of promissory fraud, claiming that, if not for U-Haul's fraudulent statements, he would never have entered into the dealership agreement. However, the commissions Ray seeks arose out of the contract, and Ray would never have made commissions but

for the contract. In his appellate brief on this point, Ray states that "the business was good and growing when [U-Haul] breached the contract." Ray cannot recover damages for both promissory fraud and breach of contract under the circumstance of this case. Thus, Ray's damages are limited to those that resulted from the fraud, and he must be put in the same position he would have been in had the fraud not occurred. *See Harrogate Corp.*, 915 S.W.2d at 817. If the fraud had not occurred, he would not have entered into the contract and, thus, would not have earned commissions therefrom. Therefore, we reverse the trial court's $16,100.00 award based on future commissions.

On appeal, Ray seeks reversal of the trial court's decision not to award him damages for his lost profits after termination of the dealership agreement. This likewise is inconsistent with Ray's theory of recovery, namely, promissory fraud. Therefore, this argument is rejected and the trial court's decision not to award damages for lost profits is affirmed.

In sum, the trial court's finding of promissory fraud is affirmed. The award of $6,016.91 in damages for expenses incurred in improving the station to facilitate the U-Haul business is affirmed. The award of $16,100.00 in damages for lost commission is reversed. The trial court's decision not to award damages for lost profits is affirmed. In all other respects, the decision of the trial court is affirmed.

The decision of the trial court is affirmed in part and reversed in part as set forth above. Costs on appeal are taxed equally to appellants, Billy S. Williams, U-Haul Company of Memphis, U-Haul International, Inc. and Joe Shoen, and their sureties, and the appellee, James E. Ray d/b/a Ray's Gulf Station, for which execution may issue, if necessary.

_____
HOLLY K. LILLARD, JUDGE