Dewayne HARGIS, and Judy Hargis, Plaintiffs–Appellants,

v.

The CITY OF COOKEVILLE, TENNESSEE, Defendant–Appellee.

Nos. 02–5390, 02–5717.

United States Court of Appeals, Sixth Circuit.

Feb. 6, 2004.

Samuel J. Harris, Lisa B. Harris, Harris Law Firm, Marla K. Williams, Legal Aid Society of Middle, Cookeville, TN, for Plaintiffs–Appellants.

Daniel P. Berexa, Cornelius & Collins, Nashville, TN, for Defendant.

Daniel H. Rader, III, Lane Moore, Moore, Rader, Clife & Fitzpatrick, Cookeville, TN, for Defendant–Appellee.

Before BOGGS, Chief Judge; KRUPANSKY, and CLAY, Circuit Judges.

KRUPANSKY, Circuit Judge.

DeWayne Hargis and his wife, Judy Hargis ("Hargises") have urged this court to find error in the district court's grant of summary judgment to The City of Cookeville ("City"), on the Hargises' claim that the City violated their due process rights when it threatened to terminate the Hargises' utility service without providing a pre-deprivation hearing on their past-due account. The district court did award the appellants declaratory relief for the City's failure to comply with the requirements set forth in *Memphis Light, Gas & Water v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), requiring notice of a customer's right to contest a disputed utility bill prior to the termination of utility service. As a result of this declaratory relief, the district court also awarded appellants attorney's costs and fees, a determination which the City has requested this court reverse, asserting that the Hargises were not "prevailing parties." For the reasons discussed below, this court affirms the grant of summary judgment for the City and vacates the award of attorney's fees to the Hargises.

On January 9, 1989, Dewayne and Judy Hargis moved into Ford Trailer Park and initiated utility services with the City of Cookeville, in the name of Judy King. Six weeks later, the appellants were evicted from the trailer park and left without paying either their rent or their electric bill. The landlord obtained a judgment for the

outstanding rent which they refused to pay.

The City referred the unpaid electric bill to AAA Collections, Inc. ("AAA") for collection in late 1989. AAA failed to locate appellants under Judy Hargis's former name. Nor could the City of Cookeville locate the Hargises until May 22, 2000,[1] when the appellants sought to clear a medical bill from their credit report. AAA Collections then noticed the unpaid electric bill and notified the City of Cookeville.[2]

On May 24, 2000, the City dispatched a representative to the Hargises' home in Cookeville and delivered an orange "hang-tag" notifying the appellants that their water and electricity would be discontinued in three days if they did not settle their past-due account with the City.[3] Dewayne Hargis called the City that day, made arrangements to pay the bill through a negotiated payment plan, and within two-hours of the City's notification, appellant had signed a payment agreement and placed an initial amount against the outstanding bill. Ap-

pellant testified that neither he nor his wife contested the bill, but inquired only about making payment arrangements.[4] Nor did the City representative who negotiated the payment plan inform the appellants of their right to dispute the outstanding bill. The Hargises' utility service was not disconnected or interrupted.

On September 7, 2000, the appellants filed a complaint seeking relief of claims pursuant to 42 U.S.C. § 1983, against both the City of Cookeville and AAA Collection Counseling Services, Inc., and pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., against AAA alone. The instant appeal involves only appellants' § 1983 claims against the City.[5]

All parties to the action filed motions for summary judgment. In a memorandum and order entered February 22, 2002, the district court granted the City's and AAA's motions for summary judgment. Although the appellants presented no proof of injury, the court, nevertheless, awarded them

---

1. The record indicates that the City lost track of the Hargises because the initial utility service was placed in Judy Hargis's maiden name King, while subsequent utility service contracts were placed in DeWayne Hargis's name. The City testified that its billing system did not cross match to find the Hargises even though they still lived in, and had utility service supplied by, the City.

2. AAA, the City of Cookeville's only collection agency, testified that by May 2000 it had ceased efforts to collect the Hargises' bill, would not have taken the Hargises to court to collect, and was aware that the statute of limitations for collecting debts in Tennessee was six years.

3. The orange hang-tag stated the following:

   We have left this notice as reminder that your utility bill according to our records has not been paid. The city employee that left this notice is not authorized to collect payments. You will need to come to the city municipal building to settle your ac-

count within the next three (3) days or your service will be discontinued. Your account has been charged $10.00 to cover the cost of the trip to leave this notice. To avoid further service charges payment should be made on this account within the time period specified above. Utility service will be cut off without notification on any returned checks that are to cover this past due amount.

4. On the other hand, Dewayne Hargis testified that he and his wife did contest the medical bills that appeared on their credit report. The Hargises cleared those accounts without being required to make any payments.

5. The Hargises initially filed their 42 U.S.C. § 1983 action against both the City of Cookeville and AAA Collections, Inc. After the district court's grant of summary judgment in favor of AAA, the Hargises stipulated that the instant appeal be dismissed with prejudice as it pertained to AAA. The dismissal order was filed by the clerk of the court on July 3, 2002.

declaratory relief for the City's failure to comply with the requirements set forth in *Memphis Light, Gas & Water v. Craft,* 436 U.S. at 12–14 (1978), providing notice of a customer's right to contest a disputed utility bill before termination of utility services.

On March 7, 2002 the Hargises filed a request for $13,053.50 in attorney's fees pursuant to the district court's determination of declaratory relief. On March 25, 2002 the appellants filed notice of appeal from the district court's summary judgment order. On May 1, 2002 the district court granted the appellants an award of attorney's fees in the amount of $1,000 and discretionary costs of $929.50, which the City appealed on May 17, 2002.

This court reviews the district court's dismissal of a suit for failure to state a claim under a Rule 56 motion for summary judgment *de novo. EEOC v. University of Detroit,* 904 F.2d 331, 334 (6th Cir.1990). Additionally, this court reviews the district court's decision on a motion for attorney's fees for abuse of discretion. *Cramblit v. Fikse,* 33 F.3d 633, 634 (6th Cir.1994).

▌ The Hargises rely upon the Supreme Court's determination in *Memphis Light, Gas & Water Division v. Craft,* to urge this panel to conclude that the district court erred in refusing to find a constitutional infirmity in the City's utility service disconnection notice to the appellants. The appellants argue that they suffered harm when the City sought to collect payment of the eleven-year-old utility bill by threatening to terminate the Hargises' current utility service. In the instant case, the Hargises have asserted that the City's

disconnection notice placed them in a position similar to the plaintiffs in *Craft.* However, the facts of the case at bar and the precedent upon which the appellants rely do not support their contention.

In *Craft,* the plaintiff brought an action challenging the constitutionality of a municipal utility's policies permitting termination of electric, gas, and water services without notice and a predetermination hearing. To ascertain whether Fourteenth Amendment procedural protections attached to the termination of electricity by the city of Memphis, the Supreme Court turned to Tennessee law for a definition of the "property" right allegedly involved. The Court concluded:

> The outcome of that inquiry [i.e. whether Tennessee recognizes the reception of electricity as a property right] is clear in this case. In defining a public utility's privilege to terminate for nonpayment of proper charges, Tennessee decisional law draws a line between utility bills that are the subject of a bona fide dispute and those that are not.

*Memphis Light, Gas & Water Division v. Craft,* 436 U.S. at 9.

Since Tennessee did not permit a public utility to terminate service "at will" where a *bona fide* dispute existed, and further, provided for an aggrieved customer to (1) enjoin a wrongful threat to terminate or (2) bring a subsequent action for damages or a refund, the Supreme Court in *Craft* concluded that these protections supported a finding of a state-recognized property interest in receiving electricity, which constitutes "a 'legitimate claim of entitlement' within the protection of the Due Process Clause." *Id.* at 11–12.[6] The Court con-

---

**6.** The Supreme Court has applied the same analysis in other situations where the basic necessities of life were threatened to be withdrawn without a hearing. In *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the plaintiff's household belongings had been seized. In *Mitchell v. W.T. Grant,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the plaintiff's furniture had been repossessed because he had fallen

cluded that the due process rights of the plaintiffs had been violated because they had not been granted a pre-deprivation hearing. The Court reached this determination because of the substantial interest of the plaintiffs and the extraordinary hardship caused by the deprivation.

In *Craft*, the Supreme Court concluded that, under Tennessee law, a utility customer retains a property interest in the service of electricity by a government or regulated utility, requiring the utility to follow due-process prior to disconnection when the customer has a *bona fide* dispute concerning the correctness of a bill. In *Craft*, the Court found the City's procedures for termination of utility services constitutionally deficient, stating:

> Petitioners' notification procedure, while adequate to apprise the Crafts of the threat of termination of service, was not "reasonably calculated" to inform them of the availability of "an opportunity to present their objections" to their bills. The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending "hearing." Notice in a case of this kind does not comport with constitutional requirements when it does not advise the customer of the availability of a procedure for protesting a proposed termination of utility service as unjustified.

*Id.* at 14–15.

In the case *sub judice*, the City's notice of disconnection failed to inform the Har-

gises of their right to object to the proposed termination. Yet, as the Court indicated in *Craft*, only those persons actually harmed in a *bona fide* dispute may successfully assert a damages claim. Appellants, however, have provided no proof of harm nor evidence of a contested utility bill.

Indeed, the record has indicated the contrary. The Hargises' sworn testimony provided that they did not dispute the bill, but rather negotiated immediately to pay the debt. Judy Hargis stated that had she been notified earlier, she would have voluntarily paid the bill in question. *Craft* provides a clear distinction for utility bills subject to a *bona fide* dispute, concluding that for rights to vest with the customer or purchaser of the utility services, there must exist a *bona fide* dispute concerning the utility bill. Further, the record indicates that the City never disconnected the Hargises' utility service. In contrast, the Court in *Craft* found the required cognizable harm upon the City's termination of the Crafts's utility service.

The appellants have, nevertheless, claimed that the basis for an injury occurred when DeWayne Hargis fainted after returning from paying the negotiated first installment of the delinquent utility bill.[7] In losing consciousness, Mr. Hargis also fell and broke his glasses. However, subsequent testimony indicated that appellant did not seek medical attention for

---

behind on the payments. In *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the plaintiff's wages were garnished because of his inability to pay certain bills.

7. Appellants admit in their brief before this court that the issue of injury was not raised for summary judgment. This circuit's precedent suggests that, where appellants failed to raise the integral issue of injury before the

district court, the issue is not properly before this panel. *See Foster v. Barilow*, 6 F.3d 405 (6th Cir.1993) (issues not presented to the district court but joined for the first time on appeal are not properly before the appellate court). *See also Shepherd v. Wellman*, 313 F.3d 963, 967 (6th Cir.2002) (noting that a federal appellate court generally does not consider an issue that was not considered by the trial court).

several days, and when he did, he failed to mention the incident to his treating physician. Moreover, DeWayne Hargis's physician merely refilled appellant's prescription for medication that regulated high blood pressure, a condition Hargis admittedly suffered prior to the termination notice.

■ Appellants have further contended that the statute of limitations had expired on the debt the City sought to collect, thereby rendering the utility bill "void". However, this argument does not survive proof of the Hargises' written agreement to repay the utility bill, thereby reaffirming the debt and waiving the affirmative defense of the statute of limitations. "The rule in Tennessee is that if the statute of limitations is not pleaded within the proper time or in the proper manner, it is deemed waived and cannot be relied upon as a defense." *Steed Realty v. Oveisi*, 823 S.W.2d 195, 197 (Tenn.App.1991).

While the district court concluded that the circumstances of the instant case—the lack of proof of injury—removed appellants' claim from the ambit of the Supreme Court's directive in *Craft*, the court nevertheless determined that the Hargises were entitled to declaratory relief because the issue could be relitigated. The district court decided that,

> [a]dversely affected consumers who do dispute their utility bills would be without knowledge of their rights under *Craft* to object and to prove the validity of their objection prior to termination of services. Without reformation of the City's notice, there will likely be persons who actually have a dispute, but are mislead [sic] by the lack of notice of their rights under *Craft*.

J.A. 19.

Having awarded the Hargises declaratory relief, the district court also found appellants entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988. While the Hargises sought approximately $13,000 in fees, the district court granted appellants $1,000 in attorney fees and $929.50 in costs, noting:

> Given the extent of success, the significance of the issue on which declaratory relief was entered and the public purpose served, the application is granted in part and denied in part. Plaintiffs secured only relief of a declaratory judgment on a clearly established right. A prior successful action enjoining the violation of that right adequately served the public purpose.

J.A. 87. In rendering a decision on attorney's fees and costs, the district court relied on the Supreme Court's decision in *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

■ The City has appealed the award of attorney's fees as impermissible, contending that the Hargises were not "prevailing parties." In vacating the appellants' fee award, this court concludes that, pursuant to *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), the Hargises were not entitled to an award of attorney's fees, where the record indicated they were not "prevailing parties" whose legal relationship was altered as a result of the declaratory relief granted by the district court. Because the City had already taken remedial action, effective April 18, 2001, to change the wording of their termination tags in response to an earlier injunction, in *Linda Gamble, Ruby Copeland and Roger Copeland v. The City of Cookeville*, Docket No. 2–01–0021, the district court erred in awarding the Hargises attorney's fees.

The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988(b), permits a court, in its discretion, to award the "pre-

vailing party" in a § 1983 action "reasonable" attorney's fees as part of the costs. Even a plaintiff who is awarded only nominal damages is considered a "prevailing party" for purposes of § 1988. *Farrar v. Hobby*, 506 U.S. at 112.[8]

However, while the claim in *Farrar* focused on nominal damages, in the instant case, the Hargises did not receive *any* damage award. Indeed, because the Hargises obtained neither a "judgment on the merits" nor a "court-ordered consent decree," they are not eligible for attorney's fees, pursuant to the limitations of *Buckhannon v. W. Va. Dept. of Health and Human Resources*, 532 U.S. at 600.

In *Buckhannon*, the plaintiff obtained the result it sought when the West Virginia legislature, which was not a party to the lawsuit, changed a statute. The Court determined that the plaintiff was not a prevailing party, thus precluding it from obtaining attorney's fees. The Court stated:

> Numerous federal statutes allow courts to award attorney's fees and costs to the "prevailing party." The question presented here is whether this term includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. We hold that it does not.

*Id.* at 600. In order to "prevail," and thus to become eligible for attorney's fees, a party must have obtained a "judicially sanctioned change in the legal relationship of the parties." *Id.* at 605. "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." *Id.* Only "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Id.* at 604.

This circuit has relied upon the conclusions in *Buckhannon* in a dispute, similar to the case at bar, in *Chambers v. Ohio Department of Human Services.*, 273 F.3d 690, 693 (6th Cir.2001). In *Chambers*, plaintiffs commenced a class action pursuant to 42 U.S.C. § 1983, challenging administrative rules promulgated by defendant Ohio Department of Human Services ("ODHS"), that were utilized in determining the eligibility of institutionalized spouses for Medicaid benefits. On appeal, this court reversed the district court's determination for the plaintiffs, finding the relevant statutory language reasonable and permissible. As in the instant case, however, even before the district court entered its order on remand, the ODHS had implemented changes to its regulations that the plaintiffs in *Chambers* deemed beneficial to their claim. Thus, although the ODHS

---

**8.** Although the technical nature of a nominal damages award does not disqualify a plaintiff from prevailing party status, it does bear on the reasonableness of any attorney's fees award. *Farrar v. Hobby* 506 U.S. at 114. The most critical factor in determining the reasonableness of an attorney's fees award is the degree of success obtained. *Id.* In a civil rights action for compensatory and punitive damages, the awarding of only nominal damages highlights the plaintiff's failure to prove actual injury or any basis for awarding puni-

tive damages. *See id.* at 115. "When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Id.* (citations omitted) (affirming the Fifth Circuit's reversal of a district court's award of attorney's fees to a plaintiff who won only nominal damages); *see also Cramblit v. Fikse*, 33 F.3d 633, 635 (6th Cir.1994) (affirming a district court's denial of attorney's fees to a plaintiff who won only nominal damages).

ultimately prevailed on the merits of the case, the *Chambers* plaintiffs could be viewed as having succeeded in securing some of the benefits they were seeking via the lawsuit based on the ODHS changes. Much like the plaintiffs in *Chambers,* the appellants in the instant case have relied upon a theory of virtual victory to claim a basis for attorney's fees as a prevailing party. This variation of the catalyst theory was, however, categorically rejected in *Buckhannon* as a permissible basis for awarding attorney's fees.

As in both *Chambers* and *Buckhannon,* the instant case involved only a virtual victory for the Hargises. While the district court granted the Hargises declaratory relief, requiring the City to modify the language of the posted termination notice to account for customers' billing disputes, the judicial effect of the declaratory relief was rendered moot by a prior injunction in *Linda Gamble, Ruby Copeland and Roger Copeland v. The City of Cookeville,* Docket No. 2-01-0021, with which the City complied on April 18, 2001. Because the relief in the instant case was moot, the district court's declaratory judgment did not change the legal relationship of the parties, and under *Buckhannon,* the Hargises were not "prevailing parties" entitled to receive an award of attorney's fees.

Consequently, this Court affirms the district court's award of summary judgment to the appellee City of Cookeville on the Hargises § 1983 claim, while vacating the district court's award of attorney's fees to the Hargises.