IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
_____

JANICE YOUNG,

      Plaintiff,

Vs.

Marion Circuit No. 11241
C.A. No. 01A01-9810-CV-00517

JOHN DOE, ET AL,

      Defendants.

FILED

June 9, 1999

Cecil Crowson, Jr.

Appellate Court Clerk

_____

FROM THE MARION COUNTY CIRCUIT COURT
THE HONORABLE THOMAS W. GRAHAM, JUDGE

Edwin Z. Kelly, Jr.; Kelly & Kelly of Jasper
For Appellee, State Farm Insurance Company

Jerry S. Sloan of Chattanooga
For Appellant, Janice Young

*AFFIRMED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD**,
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

     This is an uninsured motorist insurance case. Plaintiff/Appellant, Janice C. Young, appeals the order of the trial court granting summary judgment to the unnamed Defendant/Appellee, State Farm Mutual Automobile Insurance Company (State Farm).

At all material times, Young had a liability insurance policy with State Farm that included uninsured motorist coverage. On February 11, 1994, she was involved in a vehicular accident on Interstate 24 in Marion County, Tennessee. On November 9, 1994, Young filed suit for damages against an unknown motorist, John Doe, and, pursuant to the uninsured motorist statute and her policy of insurance, served the uninsured motorist carrier, State Farm. In her complaint, Young alleges that while she was traveling in her van on Interstate 24 in the outside lane of travel, she was forced to maneuver her vehicle part way off the highway and into the right most emergency lane by an unknown driver operating a tractor-trailer who veered into her lane of travel while attempting to pass her. As a result, Young avers that she was forced into the rear of another tractor-trailer located in the emergency lane which was driven by Keith Merle Grayson. Young sustained personal injuries as a result of the accident. The complaint also contained Young's oath that "the statements contained in the foregoing complaint are true to the best of my knowledge, information and belief."

On February 9, 1995, Young filed an amended complaint adding Grayson, Bill Rohrbaugh, and Don Dau Trucking, Inc. as defendants. The amended complaint avers that Grayson, while attempting to reenter traffic from the emergency lane, veered into her lane of travel and, along with the actions of the unknown driver, caused the accident.

On January 4, 1995, State Farm answered the complaint, and, after discovery depositions were taken, filed a motion for summary judgment. During the hearing on the motion for summary judgment, the trial court granted Young leave to supplement the record by filing any affidavit desired. Shortly after Young notified the trial court that she did not intend to supplement the record, the trial court, on September 29, 1997, entered an order granting summary judgment. Young then filed a "Motion to Alter or Amend Judgment or Alternatively to Reconsider" in which, relying upon her verified complaint, she asserted that there are issues of material fact precluding summary judgment. On July 22, 1998, the trial court denied Young's motion and entered an order granting State Farm a final judgment pursuant to Tenn. R. Civ. P. 54.02. Young has appealed, and the only issue presented for review is whether the trial court erred in granting summary judgment to State Farm.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment

2

as a matter of law.  Tenn. R. Civ. P. 56.04.  The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997).  On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. ***Id.***  In ***Byrd v. Hall***, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial.  In this regard, Rule 56.05 [now Rule 56.06] provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

***Id.*** at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. ***Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995).  Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. ***Bain***, 936 S.W.2d at 622.  Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. ***Warren v. Estate of Kirk***, 954 S.W.2d 722, 723 (Tenn. 1997).

Although this case involves a "phantom driver," State Farm concedes in its brief that there could be a genuine issue of material fact concerning the existence of such a "phantom driver" and therefore summary judgment on this issue is inappropriate.  State Farm did not seek summary judgment because of the lack of proof concerning a "phantom driver,"[1] but its motion

---

[1] The existence of a "phantom driver" must be established pursuant to the provisions of T.C.A. § 56-7-1201 (e) (1994) and (Supp. 1998), which provides:

> (e) If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, the insured shall have no right to recover under the uninsured motorist provision unless:
> (1)(A) Actual physical contact shall have occurred between the motor vehicle owned or operated by such unknown person and the person or property of the insured; or
> (B) The existence of such unknown motorist is established by clear and convincing evidence, other than any evidence provided by occupants in the insured vehicle;
> (2) The insured or someone in the insured's behalf shall have reported the accident to the appropriate law enforcement

for summary judgment was premised on the lack of proof that the uninsured motorist proximately caused the accident in which Young was involved.

In support of its motion for summary judgment, State Farm relies upon the deposition testimony of Young and Grayson which, according to State Farm, indicate that the unknown driver did not do anything that contributed to the cause of the accident.

Grayson testified during his deposition, in pertinent part, as follows:

Q.  Okay. And your truck would normally have the rearview mirror on the left-hand side of your cab that you'd be looking into?

A.  Yes.

Q.  Do you recall -- as you were moving very slowly, do you recall in the mirror actually seeing a vehicle or vehicles in the mirror prior to the collision?

A.  Yes, two vehicles.

Q.  Okay.  And what you either at that time saw or have since learned, could you describe those vehicles that you saw in the rearview mirror?

A.  One was a semi, one was a van.

Q.  Okay.  And would the van have been in the lane closest to you or in the right-hand lane of the freeway?

A.  Yes, it would have been.

Q.  And the other semi or tractor-trailer, is that correct --

A.  Yes.

Q.  -- would have been in the left-hand lane?

A.  Yes.

Q.  And were those vehicles somewhat or jointly --

A.  They were side by side.

Q.  Side by side.  Okay.

A.  The semi was passing the van at the time.

Q.  Okay.  Do you recall anything at all about the semi other than the fact that it was passing the van, any color or anything of that

agency within a reasonable time after its occurrence; and
    (3) The insured was not negligent in failing to determine the identity of the other vehicle and the owner or operator of the other vehicle at the time of the accident.

nature?

A. No.

Q. Okay.

A. All I know is he was -- from what I saw in the mirror, he was in his lane, she was in her lane.

*            *            *

Q. Did you make any other observations at all of the two vehicles prior to feeling the collision on your vehicle?

A. I saw her move over across the solid white line in the emergency lane.

*            *            *

Q. Could you tell in any way whether the other truck that may have passed in the left lane, could you tell in any way whether he could have been drifting over into her lane and forced her off the road on the right?

A. No. He was -- he was not drifting. What the deal was, the road is so grooved up there, you know what I mean by grooved, grooves in the road, there was water standing in those grooves. And when he passed her, the water splashed up to where it was probably splashing in front of her.

Q. And that's what you speculate may have happened or what you actually saw in the rearview mirror?

A. I saw water splashing in the rearview mirror. I don't know if it was high enough to impair her vision . . . .

*            *            *

Q. Now, as I understand you to say when you observed in your left side view mirror the other tractor-trailer was completely within its lane of travel?

A. Yes.

*            *            *

Q. And Ms. Young's vehicle I assume when you first saw it, too, was within the -- within her lane of traffic, which would be the slow lane, we'll say?

A. Yes.

Q. And at that time you were completely within the emergency lane?

A. Yes.

*            *            *

Q. And the other tractor-trailer, by that time had it already passed Ms. Young's vehicle?

A. When she started moving to the right out of her lane into the emergency lane, he was about side by side with her.

*           *           *

Q. Now, you mentioned you observed when the tractor-trailer was approaching from your rear, that there was water splashing?

A. Yes.

Q. But you did not observe how high the water splashed or whether it --

A. Impaired her vision?

Q. Impaired her vision.

A. No, I didn't.

Q. And again, I think you've answered the question, but you did not see nor was there any contact between the other tractor-trailer and Ms. Young's vehicle?

A. No.

*           *           *

As for Young, she testified during her deposition, in pertinent part, as follows:

Q. Okay. As you got toward the scene of where the accident happened, just tell me in your own words what happened, and then I'll ask you some specific questions about that to fill in?

A. I was in the right lane, there was a truck that was coming around me in the left lane, and I had thought if I could get over, if he could get on around, I could get over. The truck in the emergency strip, he had started moving and that's why I kept watching him, because that worried me.

Q. Yes.

A. I thought if this truck in the left lane could get on around, then I could get over out of his way, it seemed to me like he was wanting to enter that lane. The next thing I knew the accident, you know, the wreck had occurred.

*           *           *

Q. All right.

A. I was more concerned with the man in the emergency strip.

Q. Okay. Why were you so concerned about him?

A. Because he was rolling down, he was rolling down the emergency strip, he had his left blinker on.

6

\*         \*         \*

Q. Now, at any time did your vehicle ever have any contact with the truck to your left that was coming up to pass you?

A. I can't remember.

Q. Okay. What's the last thing you do remember?

A. The last thing I do remember, oh, I remember seeing the truck in the emergency strip easing out into my lane. He wasn't completely in the lane, I guess. That's the last thing I remember, watching the two trucks, you know, this one so I could get over and then seeing him as he was going down, pulling out on to me.

\*         \*         \*

Q. Now at that point that you saw that vehicle start to come into your lane, where was the truck to your left, had he come up beside your van?

A. Yes, he was on up further.

\*         \*         \*

Q. What I'm asking about, though, is the truck to your left, do you remember any contact with it?

A. I can't remember.

\*         \*         \*

Q. Where was that tractor-trailer when you last recall having seen it?

A. I would say it was up beside me pretty good, maybe the tractor up just a little in front of the van, there again, I can't remember exactly.

Q. But as best you can recall, are you telling me that the tractor portion of the vehicle had gotten in front of the front portion of your van.

A. Yes sir.

Q. And as I understand at that point in time you were not looking so much at the tractor-trailer to your left but you were more concerned with the tractor-trailer to your right?

A. Well, I would glance over to see, you know, just to see how much longer it would be before I could get over into that lane to get out of the right lane for this guy to come on out.

\*         \*         \*

Q. Do you know whether the tractor-trailer to your left was completely within its lane of traffic when you last saw it?

A. I don't remember, I can't recall that.

7

*       *       *

Q. Do you recall ever if there was any water on your windshield immediately before the impact?

A. No, sir, I don't recall any water.

Q. Was there any water on your windshield?

A. No, sir.

Q. So, there was nothing obstructing your vision?

A. No, sir, I could see.

*       *       *

While evidence of the existence of the an unknown motorist must be established by clear and convincing evidence, the other essential elements of the claim, including causation, may be established by a preponderance of the evidence. *Fruge v. Doe*, 952 S.W.2d 408, 412 (Tenn. 1997). Young asserts that Grayson's deposition testimony, her deposition testimony, and the allegations in her sworn complaint create a genuine issue of material fact with regard to causation to preclude the granting of summary judgment.

As noted above, summary judgment is appropriate where there are no genuine issues of material fact. While there is evidence of the existence of an unknown driver, there is no evidence presented to create a genuine issue for trial that the unknown driver was the cause of the accident. In her sworn deposition testimony, Young states that she does not remember if the unknown truck made contact with her vehicle or if it entered her lane of traffic forcing her off the road. According to her version in her deposition and Grayson's version in his deposition, it appears that the unknown truck passed Young's vehicle without ever making contact with it and without forcing her out of her lane.

However, Young avers that her sworn complaint creates genuine issues of material fact precluding the grant of summary judgment. At the hearing on State Farm's motion for summary judgment, Young was given an opportunity to supplement the record by filing any affidavits that might contradict the deposition testimony relied upon by State Farm. However, Young notified the trial court that she did not intend to supplement the record with any affidavits. In her motion to alter or amend, Young relies upon her "sworn" complaint as an affidavit in opposition to the motion for summary judgment. The complaint states in pertinent part:

8

> At a point approximately one mile before Exit 155, at mile post 154, the Plaintiff was forced to maneuver her vehicle partway off the highway and into the right most emergency lane by a tractor trailer, drive [sic] by an unknown, unnamed motorist, to-wit, Defendant, John Doe, proceeded to veer over into Plaintiff's lane of travel while passing her. As a result of Defendant John Doe's actions, Plaintiff's vehicle was forced unavoidably into the rear of another tractor trailer. . . .

Young's reliance on the "sworn" complaint is misguided.

Tenn.R.Civ.P. 56.06 provides:

> **Form of affidavits -- Further testimony -- Defense Required. --** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . .

Young's verification to her complaint states that "the statements contained in the foregoing complaint are true to the best of my knowledge, information and belief." Young's "affidavit" fails to meet the requirements of Rule 56.06. *See Guekel v. Cumberland-Swan, Inc.*, No. 01A01-9410-CV-00482, 1995 WL 386558, at *2 (Tenn. App. June 30, 1995); *see also Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498 (Tenn. 1978); *Keystone Ins. Co. v. Griffith*, 659 S.W.2d 364, 365-66 (Tenn. App. 1983). Therefore, no consideration should be given to her "affidavit" in determining whether to grant summary judgment to State Farm. However, even if we were to find that Young's complaint was a proper affidavit in opposition to the motion for summary judgment, these statements are in direct contradiction to her sworn deposition testimony and therefore her testimony is a nullity. *Tibbals Floring Co. v. Stanfill*, 219 Tenn. 498, 410 S.W.2d 892 (1967); *Ayers v. Rutherford Hosp., Inc.,* 689 S.W.2d 155 (Tenn. App. 1984).

Accordingly, the order of the trial court is affirmed, and the case is remanded to the trial court for such further proceedings as may be necessary. Costs of appeal are assessed against the appellant.

_____

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____

**DAVID R. FARMER, JUDGE**

9

_____
**HOLLY KIRBY LILLARD, JUDGE**