IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 22, 2002 Session

## NORA EDDINGS AND SYLVESTER EDDINGS v. SEARS ROEBUCK & CO.

**Direct Appeal from the Circuit Court for Shelby County**
**No. 300382-7 T.D.; The Honorable Robert A. Lanier, Judge**

---

**No. W2001-01107-COA-R3-CV - Filed July 19, 2002**

---

This appeal involves a personal injury and allegations of promissory fraud stemming from a display bed collapsing at the defendant's department store. The plaintiffs spoke with the defendant's claim adjustor following the incident and were allegedly assured that medical bills would be paid by the defendant or that the claim would be "concluded." The plaintiffs, however, were informed by the defendant's claims adjustor approximately one year after the accident that the defendant held no liability due to the lapse of the statute of limitation. The plaintiffs sued the defendant for both personal injury and promissory fraud. Both claims were eventually defeated before a trial could be held and the plaintiffs appealed. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Richard L. Winchester, Jr., Memphis, for Appellants

Mark W. Raines, R. Scott Vincent, Memphis, for Appellee

**OPINION**

**I. Facts and Procedural History**

On September 29, 1994, Sylvester and Nora Eddings (Mr. and Mrs. Eddings) visited the Sears Home Life store located at the Hickory Ridge Mall in Memphis. The Sears Home Life store is owned and operated by Sears Roebuck & Co. (Sears). While in the store, Mrs. Eddings sat on a display bed to try it out. The display bed collapsed while she was sitting on it due to the bed's improper positioning on the bed frame. The bed's collapse caused injuries to Mrs. Eddings.

When store personnel learned of the incident, a manager referred Mr. and Mrs. Eddings to Yvonne Daniel ("Ms. Daniel"), a claims adjuster in charge of handling Sears's liability claims. The substance of the various conversations between Ms. Daniel and the Eddings is somewhat in dispute. Sears asserts that Ms. Daniel advised Mrs. Eddings that Sears would pay up to $500.00 of "med pay" and that all of her medical bills would need to be sent to Ms. Daniels in order to "conclude" the claim. Sears asserts that "concluding" the claim only meant it would assess the claim on the basis of liability, damages, and medical expenses, and not necessarily pay Mrs. Eddings' medical bills.

Mrs. Eddings appears to have offered somewhat contradictory statements with regard to the conversations. In her sworn complaint, she agrees with Sears's version of the facts by stating that Ms. Daniels told her "to seek medical treatment and, that upon being discharged, that Sears would 'conclude' the claim." In a sworn deposition, however, taken sometime later, Ms. Eddings stated, "prior to going to see Dr. Swan, I told [Ms. Daniel] that I was going to seek medical attention. And she told me that [Sears] would take care of the bill at that time when I was completely finished." Similarly, in the same deposition, Ms. Eddings also stated, "I called [Ms. Daniels's] office and let her know that I was through going to my doctor, because she had informed me once I finished my medical treatment to call her and they would take care of my bill once everything was completed." Thus, although Mrs. Eddings's complaint alleges that Sears promised to "conclude" the claim, she testified by deposition that Sears explicitly promised to "take care of" her doctor bills.

During the time that Ms. Eddings was receiving treatment for her injuries, Ms. Daniel instructed her that reports from her doctor would be required before reimbursement of any medical bills could occur. Specifically, Sears alleges that Mrs. Eddings was told that she would need to submit a "detailed" medical report at the conclusion of her treatment to receive any reimbursement beyond the $500.00 "med-pay" amount mentioned above. Sears maintains that Mrs. Eddings was again told that upon receiving the detailed report her claim would be "concluded" on the basis of liability, damages and medical expenses related to the injury. Although Mrs. Eddings contends that she provided reports and doctor bills to Ms. Daniel, Sears asserts that Mrs. Eddings did not submit a final detailed report until October 1995 and only after several failed attempts to contact her.

After finally receiving all of the records requested, Sears informed Mrs. Eddings that the statute of limitations had expired and that her medical bills would not be paid. On January 24, 1997, Mr. and Mrs. Eddings filed suit against Sears. In the suit, Mrs. Eddings sought compensatory and punitive damages for personal injury and promissory fraud. In addition, Mr. Eddings sought damages for loss of consortium. The trial court sustained a motion to dismiss the personal injury claim because the statute of limitations had expired, but reserved the Eddings' right to proceed on the issue of promissory fraud. The promissory fraud issue was dismissed approximately one year later on summary judgment. Mr. and Mrs. Eddings filed a notice of appeal and this case is now properly before this Court.

## II. Issues

The Eddings have raised two issues for our review:

1. Whether the trial court erred in granting Sears's motion to dismiss as to Mrs. Eddings' personal injury claim; and

2. Whether the trial court erred in granting Defendant's motion for summary judgment as to Plaintiff's claim for promissory fraud.

## III. Personal Injury Claim

The Eddings first argue that the trial court erred in granting Sears's motion to dismiss their claim for personal injury. Our standard of review on a motion to dismiss is *de novo* with no presumption of correctness because our inquiry is purely a question of law. Carvell v. Bottoms, 900 S.W.2d 23, 26 (Tenn. 1995). In considering a motion to dismiss, we are required to take the allegations of the complaint as true, and to construe the allegations liberally in favor of the plaintiff. Pemberton v. American Distilled Spirits Co., 664 S.W.2d 690, 691 (Tenn. 1984). A complaint should be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Id.

Our review of this issue must necessarily begin with a look at section 28-3-104 of the Tennessee Code, which defines the statute of limitations for personal injuries. This section provides that actions "for injuries to the person" must "be commenced within one year after the cause of action accrued." TENN. CODE ANN. § 28-3-104(a) (2000). Because the Eddings' cause of action for personal injury accrued on September 29, 1994 and the suit was not filed until January 24, 1997, the statute of limitations had expired.

The Eddings, however, relying on Jackson v. Kemp, 365 S.W.2d 437 (Tenn. 1963), argue that the statute of limitations should not stand as a bar to their claim against Sears. Specifically, the Eddings assert that Sears should be estopped from gaining the benefits of the statute of limitations because of the actions of Ms. Daniel.

In Jackson, the plaintiff was in a car accident and sustained injuries. Id. at 438. Following the accident, an insurance adjustor for the insurance company of the other driver involved in the accident made an offer to the plaintiff in an attempt to persuade him not to file suit. Id. The offer consisted of a promise to pay the plaintiff's hospital and medical bills on the condition that the plaintiff agree not to hire an attorney or file suit against the driver or insurance company. Id. The plaintiff agreed to the terms of the offer. When one year had passed, however, the insurance adjuster refused to pay the plaintiff's medical bills because the statute of limitations had expired. Id.

The plaintiff filed suit against the adjustor and the insurance company on the theory that they had formed a contract with him and subsequently breached it. Id. The trial court dismissed the plaintiff's action on two grounds. First, the trial court ruled in that the plaintiff's action was actually

one in tort instead of contract and that the statute of limitations for a tort claim had expired. Second, the trial court held that the subject matter of the insurance adjustor's declaration was "so indefinite and uncertain as to be unenforceable."

Our supreme court, however, in reversing the trial court's decision, ruled that the plaintiff's cause of action was a viable action under theories of contract with the plaintiff's forbearance in not retaining an attorney and filing suit serving as consideration. In support of its ruling, the supreme court cited with approval Corbin on Contracts, § 221, Volume I, which states:

> If, before the action for a tort is barred, the party charged with the tort makes a promise to pay, or not to plead the statute in defense, as to lull the claimant into security and cause him to forbear suit until the statutory period has expired, these facts may operate as an estoppel to plead the statute. Such action in reliance on the promise may make it enforceable as a contract, the action in reliance having the same effect as a consideration.

Jackson, 365 S.W.2d at 439. With regard to the trial court's second basis for dismissal, the court further ruled that the insurance adjustor's offer to the plaintiff was sufficiently definite to form a contract. Accordingly, because the statute of limitations for enforcement of a contract had yet to expire, the court ruled that the trial court erred in dismissing the plaintiff's suit.

While at first glance, the Eddings' reliance on Jackson appears to offer credibility to their argument, several key distinctions exist between the case *sub judice* and Jackson. Most notably, with respect to this issue, the Eddings did not file suit for breach of contract. Instead, the Eddings proceeded merely as tort claimants. As stated above, the supreme court's reasoning in Jackson rested in the fact that the plaintiff there was suing under theories of contract as opposed to tort. Because the claim of the plaintiffs in Jackson was actually one in contract, the supreme court ruled that they should not be barred from suit by the statute of limitations for tort claims. Here, however, this reasoning has no application to the claim for personal injury filed by the Eddings.

Further, even if the Eddings had filed suit for breach of contract, their claim still lacks merit. In Jackson, a specific agreement was made between the parties wherein the defendant insurance company would pay for bills if and only if the plaintiff agreed to forego getting an attorney and filing suit. The plaintiffs' forbearance in not getting an attorney or filing suit served as consideration for the contract. Here, though, Sears never attempted to dissuade the Eddings from pursuing their legal remedies. Accordingly, we find the Eddings' arguments with respect to this issue to be without merit.

As a final note, the Eddings argue that the trial court erred with respect to this issue by relying on Whitehead v. Davidson, 522 S.W.2d 865 (Tenn. 1975). Although the record is silent as

-4-

to whether the court actually relied on <u>Whitehead</u> with respect to this issue,[1] for the above reasons, the decision of the trial court was correct whether the decision was relied upon or not.  Accordingly, with no other basis for avoiding the statute of limitations, we affirm the trial court's decision with respect to this issue.

## IV.  Promissory Fraud Claim

The Eddings next argue that the trial court erred by granting summary judgment to Sears with respect to their promissory fraud claim.  Our standard of review for this issue is well settled.  The trial court's grant of summary judgment is not entitled to a presumption of correctness on appeal. <u>McClung v. Delta Square Ltd. Partnership</u>, 937 S.W.2d 891, 894 (Tenn. 1996).  Rather we must review *de novo* to determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met.  <u>Mason v. Seaton</u>, 942 S.W.2d 470,472 (Tenn. 1997).  Summary judgment is warranted only when there are no genuine, material factual disputes with regard to the claim or defense asserted in the motion and the moving party is entitled to a judgment as a matter of law.  <u>Bain v. Wells</u>, 936 S.W.2d 618, 622 (Tenn. 1997).  In making our determination, we must take the strongest view of the evidence in favor of the nonmoving party, allowing all reasonable inferences in his or her favor and discarding all countervailing evidence.  <u>Shadrick v. Coker</u>, 963 S.W.2d 726, 731 (Tenn. 1998) (citing <u>Byrd v. Hall</u>, 847 S.W.2d 208, 210-11 (Tenn. 1993)).

This Court recently provided a brief synopsis of Tennessee's stance on promissory fraud in <u>Kandel v. The Center for Urological Treatment and Reasearch</u>, No. M2000-02128-COA-R3-CV, 2002 Tenn. App. LEXIS 260 (Tenn. Ct. App. April 17, 2002).  In <u>Kandel</u>, we stated:

> The Tennessee Supreme Court "has not adopted the doctrine of promissory fraud in Tennessee, but has merely indicated a willingness to consider adopting the rule 'in a proper case where justice demands.'" <u>Farmers & Merchant's Bank v. Petty</u>, 664 S.W.2d 77, 80 (Tenn. Ct. App. 1983) (quoting <u>Fowler v. Happy Goodman Family</u>, 575 S.W.2d 496, 499 (Tenn. 1978)). To establish a claim for promissory fraud, a claimant must show that, at the time the promise was made, the person making the promise had no intention to perform. <u>Fowler</u>, 575 S.W.2d at 499. The party alleging promissory fraud bears the burden of proving that the defendants who made the promise had no present intent to perform at the time the promise made. <u>Brungard v. Caprice Records, Inc.</u>, 608 S.W.2d 585, 590 (Tenn. Ct. App. 1980).

<u>Kandel</u>, 2002 Tenn. App. LEXIS 260, at *23.

Once one looks past this generally accepted synopsis, however, and deeper into the individual elements of promissory fraud, the law becomes much less clear.  The particular ambiguity involves the manner in which a party alleging promissory fraud must prove the existence of the promisor's

---

[1] It appears that the Eddings have confused the issues and are referring to the trial court's reliance on <u>Whitehead</u> with respect to its granting of summary judgment for promissory fraud.

lack of present intent to carry out the promise. Unfortunately, that inquiry lies at the heart of this appeal.

The best place to begin this portion of our analysis is with our supreme court's often quoted opinion in Fowler. In Fowler, the supreme court held that the mere subjective belief of the party alleging promissory fraud that the promisor had no intent to carry out the promise will not overcome a motion for summary judgment. Specifically, relying on *Restatement (Second) of Torts* § 530, Comment (d) (1977), the court stated:

> . . . [W]e are of the opinion that the affidavit, tested by the majority rule, is legally insufficient and wholly fails to establish by any competent and material evidence that the promises and representations of respondents as to their future conduct were made without any intention on their part to perform. Their failure to perform is sufficiently stated, but only petitioner's subjective belief and his unspecified "information" are advanced in support of the claim of fraudulent intent to deceive and not to undertake performance.[2]
>
> Absent any admissions in the respondent's pleadings which would support a claim of inducing fraud under either the majority or the minority view, petitioner was obligated to take depositions, demand answers to interrogatories, submit requests for admissions or, at a minimum, to file supporting affidavits containing facts which, in the language of Rule 56.05, "would be admissible in evidence" in support of his contention. His subjective belief and his other unspecified information are legally insufficient.

Fowler, 575 S.W.2d at 499. Further, relying on the above quote in Fowler, Judge Conner's concurring opinion in Farmers & Merchants Bank recognized that without direct proof, "there seems to be a considerable reluctance on the part of the court to infer a false intent from the subsequent failure to follow through on a promise." Farmers & Merchants Bank, 664 S.W.2d at 82. More recently, this Court has relied on Judge Conner's concurrence by holding that our supreme court would be unwilling to apply the doctrine of promissory fraud absent "direct proof of a misrepresentation of actual present intention." Kandel, 2002 Tenn. App. LEXIS 260, at * 23-24.

In American Cable Corp. v. ACI Mgmt., Inc., No. M1997-00280-COA-R3-CV, 2000 Tenn. App. LEXIS 615 (Tenn. Ct. App. Sept. 14, 2000), however, the Middle Section of this Court took a much more relaxed approach in determining the level of proof needed to show a promisor's lack of intent to perform. Agreeing with previous precedent, the American Cable court held that mere

---

[2] "The intention of the promisor not to perform an enforceable or unenforceable agreement cannot be established solely by proof of its nonperformance, nor does his failure to perform the agreement throw upon him the burden of showing that his nonperformance was due to reasons which operated after the agreement was entered into. The intention may be shown by any other evidence that sufficiently indicates its existence, as, for example, the certainty that he would not be in funds to carry out his promise." Restatement (Second) of Torts § 530, Comment (d) (1977).

failure to perform by itself is insufficient to prove fraudulent intent and correctly stated that "[n]ot every broken promise begins with a lie." Id. at *15. However, when discussing the facts of the case, the court also stated that to overcome summary judgment, a party alleging promissory fraud could offer evidence from which a "fact-finder could reasonably infer" that the promisor had no intent to perform. Id. at *16. Under this approach, the necessary intent for promissory fraud could apparently be shown by circumstantial proof alone.

Accordingly, we are left to choose between two levels of proof needed to sufficiently support a claim of promissory fraud: direct proof or circumstantial evidence from which a reasonable person could infer that the promisor lacked intent to perform. Because of the Tennessee Supreme Court's noticeable unwillingness to apply the doctrine except in those cases where there is direct proof of a misrepresentation of actual present intention, we are inclined to agree with the more recent holding in Kandel stating that direct proof should be required.

In coming to this conclusion, we have considered several problems with supporting the "circumstantial evidence approach" apparently taken in American Cable. Although the American Cable court stated that "no inference of fraud should be made from circumstances that equally permit reasonable inferences of non-fraudulent conduct," the court still apparently held that in certain cases, fraudulent intent could be inferred from the circumstance. Id. at *15-16. We further believe that with the confusion already surrounding the issue of promissory fraud, the addition of another gray area seems counterproductive to the progression of the law. For example, it would be extremely difficult for a trial court to distinguish between situations where both a fraudulent and non-fraudulent intent could be inferred and situations where only fraudulent intent could be inferred. Finally, in further support of this holding, we also must note the long settled principles in any fraud case, that the party alleging fraud bears the burden of proving each individual element and that the elements cannot be presumed absent some type of special relationship between the parties. TENNESSEE JURISPRUDENCE § 39 (1984).

Applying this interpretation of law to the case *sub judice*, we find the Eddings' arguments with respect to this issue to be without merit. The Eddings have not submitted sufficient material evidence to support their claim for promissory fraud. The evidence at most provides a basis from which one could speculate on the intent of Ms. Daniels and the other agents of Sears. Accordingly, under the foregoing analysis, this evidence fails to rise to the level required for the cause of action to survive a motion for summary judgment. Thus, we hold that the trial court did not err with respect to this issue in granting Sears's motion for summary judgment.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's decision.  The costs of this appeal are taxed to the Appellants, Nora Eddings and Sylvester Eddings, and their surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE