# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 10, 2024 Session

## PMC SQUARED, LLC v. RITA GALLO ET AL.

**Appeal from the Chancery Court for Knox County**
No. 204251-1          John F. Weaver, Chancellor
_____

### No. E2023-00524-COA-R3-CV
_____

Tenants filed action against their former landlord in the form of a Countercomplaint, alleging that they had suffered emotional distress resulting from slanderous statements that the landlord made to others about the tenants. In response, the landlord moved to dismiss the tenants' claims under the Tennessee Public Participation Act ("TPPA"). The trial court determined that the landlord had not met its prima facie burden to show that the tenants' claim fell within the scope of the TPPA and dismissed the landlord's TPPA petition. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Ben M. Rose, Brentwood, Tennessee, and Bennett Hirschhorn, Knoxville, Tennessee, for the appellant, PMC Squared, LLC.

Jerrold L. Becker and Emily K. Stulce, Knoxville, Tennessee, for the appellees, Rita Gallo, Dominick Gallo, Nick Gallo, and Christa Kennedy.

## OPINION

### BACKGROUND

In April 2021, PMC Squared, LLC ("PMC") leased two apartments to the Appellees/Counter-Plaintiffs. One lease was with Dominick Gallo and Rita Gallo (the "Gallo parents"), and the other lease was with Nick Gallo and Christa Kennedy (the Gallos and Ms. Kennedy together, the "Tenants"). Nick Gallo is the son of the Gallo parents, and their units were on opposite ends of a 27-unit complex. The relationship between PMC

and the Tenants quickly soured, and the parties agreed that the Tenants would vacate their units at the end of their respective leases, on March 31, 2022 and April 1, 2022.

On October 22, 2021, PMC initiated an eviction proceeding against the Gallo parents in the Knox County General Sessions Court. In late February or early March 2022, while the eviction was pending but after a trial on the merits,[1] the Gallo parents began vacating the premises but still had personal property in the leased unit. PMC and the Gallo parents agreed that PMC's agent, Camille Leveille ("Ms. Leveille"), could enter the unit between 4:00pm and 7:00pm on March 4, 2022, to show the unit to prospective tenants.

On March 4, Ms. Leveille entered the unit earlier than the agreed upon time of 4:00pm and, according to the Tenants, took a vacuum cleaner belonging to the Gallo parents, dismantled security cameras the Gallo parents had installed on the premises, and changed the locks to the unit. The Gallo parents were not present but observed Ms. Leveille's actions on footage from the security cameras they had installed. At the request of the Gallo parents, Nick Gallo and Christa Kennedy appeared at the Gallo parents' unit while Ms. Leveille was still present. Thereafter, the Gallo parents also appeared at the scene, and a confrontation occurred between the Tenants and Ms. Leveille. Ultimately, both the Tenants and Ms. Leveille called the Knoxville Police Department ("KPD") and spoke to responding officers. KPD determined the matter was a civil one and took no action. The scheduled showings occurred between 4:00pm and 7:00pm; however, PMC averred that the Tenants "stood there like a lynch mob and glared at [Ms. Leveille] and the prospective tenants. Their demeanor, gestures, and languages were threatening, and this caused [Ms. Leveille] to feel unsafe."

Four days later, on March 8, 2022, PMC filed an *Ex Parte* Verified Petition for Temporary Restraining Order in the Knox County Chancery Court (the "trial court") averring that the Tenants had "no right to be on the premises" and that Ms. Leveille had not felt safe to return to the premises since March 4 as she feared that the Tenants would "attack her or call the police again." An *ex parte* Temporary Restraining Order was entered that same day, and the matter was set for hearing on March 23, 2022. By agreement of the parties, a Restraining Order was entered by the trial court on April 1, 2022. At that point, all of the Tenants had vacated their respective units, and PMC voluntarily dismissed without prejudice both of its separate eviction proceedings pending against the Tenants.[2]

---

[1] PMC avers that a "trial on the merits" had occurred and that the Gallos "had vacated the property and [PMC] had repossessed the rental unit," but the record does not reflect the actual status of the detainer action at that time.

[2] Though it is not in the record before this Court, the parties' filings reference an eviction proceeding that PMC initiated against Nick Gallo and Christa Kennedy in the Knox County General Sessions Court on March 22, 2022.

There were no further confrontations between the parties. On November 3, 2022, the Tenants filed an Answer to PMC's March 2022 *Ex Parte* Verified Petition and a Countercomplaint against PMC. The Countercomplaint asserted causes of action for Breach of Contract and Destruction of Personal Property and sought an award of compensatory damages against PMC. Under the heading "CAUSES OF ACTION," the Countercomplaint included two subheadings: "BREACH OF CONTRACT" and "DESTRUCTION OF PERSONAL PROPERTY." Under the Destruction of Personal Property subheading, the Tenants averred, *inter alia*:

> 27. The actions of [Ms.] Leveille while she was the agent of PMC, were the proximate cause for the significant emotional distress that each of the [Tenants] sustained as a result of the slanderous statements that she made to others about them, including members of the Knoxville Police Department and other residents. These statements were designed to tear down the reputation and good standing of the [Tenants] in their respective communities.

In response to the Countercomplaint, PMC filed a document titled "Tenn. Code Ann. § 20-17-104 Verified Petition to Dismiss Defendant's Counter-Complaint Slander Claims" (the "TPPA Petition"). In the TPPA Petition, PMC quotes paragraph 27 of the Countercomplaint and avers that the Countercomplaint "is in retaliation against [PMC] for filing eviction proceedings and a Complaint for a Temporary Restraining Order against [the Tenants][;]" "is designed to harass and intimidate [PMC], and to chill [PMC]'s right to public participation in the form of 1st Amendment free speech[;]" and "is a Strategic Lawsuit Against Public Participation (SLAPP)." PMC asked the trial court to "[d]ismiss with prejudice the portions of [the] Counter-complaint relating to defamation, and damages pled as being related to defamation" and to "[d]ismiss [the] entire Counter-Complaint with prejudice." Although PMC also averred in the TPPA Petition that the Tenants failed to "plead with any specificity as to the statements [PMC] allegedly made[,]" and this "failure to plead with specificity as a matter of law compels this Court to dismiss their claims[,]" PMC did not state that it was seeking any relief pursuant to Tennessee Rule of Civil Procedure 12.

The TPPA Petition included a notarized "Verification" executed by Ms. Levielle stating:

> I, **Camille Levielle, authorized representative for PMC Squared, LLC**, state under penalty of perjury, according to law, hereby depose and state that the facts and statements contained in the foregoing Complaint [*sic*] are true and correct to the best of my information, knowledge and belief.

The Tenants did not file a response to the TPPA Petition, and a hearing on the TPPA Petition occurred on February 9, 2023.  At the hearing, PMC's counsel argued that the TPPA Petition must be granted by default pursuant to Tennessee Code Annotated section 20-17-104[3] because the Tenants failed to respond five days before the hearing.  However, the trial court noted that it must first determine whether the matter fell within the scope of the TPPA.  When asked if PMC had any evidence it wanted to present, PMC's counsel stated that the TPPA does not require PMC to put on any evidence and that PMC had no evidence it wished to present.  Instead, he argued that PMC's prima facie case "can be proven with legal arguments."  The Tenants' counsel argued simply that the TPPA does not apply to this case and asked the trial court to dismiss the TPPA Petition.

The trial court dismissed the TPPA Petition, finding: (1) PMC did not present any admissible evidence in support of the TPPA Petition, so as to trigger the burden-shifting framework of Tennessee Code Annotated section 20-17-105; (2) section 20-17-104(c) does not require a trial court to grant a TPPA petition by default simply because the opposing party failed to respond to the petition; (3) PMC did not make a prima facie case that the Countercomplaint "is based on, relates to, or is in response to [PMC]'s exercise of the right to free speech, right to petition, or right of association[;]" and (4) the TPPA does not apply to this case.  This timely appeal followed.

## ISSUES

PMC presents the following issues on appeal, which we consolidate and restate:

1. Whether the trial court erred in concluding that PMC was required to present admissible evidence pursuant to Tenn. Code Ann. § 20-17-105(d).

2. Whether the trial court erred in concluding that PMC did not meet its prima facie burden pursuant to Tenn. Code Ann. § 20-17-105(a).

---

[3] Section 20-17-104 provides:

    (a) If a legal action is filed in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may petition the court to dismiss the legal action.

\* \* \*

    (c) A response to the petition, including any opposing affidavits, may be served and filed by the opposing party no less than five (5) days before the hearing or, in the court's discretion, at any earlier time that the court deems proper.

3. Whether the trial court erred in concluding that Tenants' claim does not fall within the scope of the TPPA.

## STANDARD OF REVIEW

This case requires us to construe the TPPA. "[W]hen an issue on appeal requires statutory interpretation, we review the trial court's decision de novo with no presumption of correctness." *Nationwide Mut. Fire Ins. Co. v. Memphis Light, Gas and Water*, 578 S.W.3d 26, 30 (Tenn. Ct. App. 2018) (citing *Wade v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 469 S.W.3d 54, 58 (Tenn. Ct. App. 2015)). The polestar of statutory interpretation is the intent and purpose of the legislature in enacting the statute. *Id*. We begin by "reading the words of the statutes using their plain and ordinary meaning in the context in which the words appear." *Id.* When the language is clear and unambiguous, we look no further than the language of the statute itself to determine its meaning. *Id.*

## DISCUSSION

### A. Admissibility

"We review a trial court's decision to admit or exclude evidence . . . under the abuse of discretion standard of review[.]" *Allen v. Albea*, 476 S.W.3d 366, 377 (Tenn. Ct. App. 2015) (citing *Dickson v. Kriger*, 374 S.W.3d 405, 408 (Tenn. Ct. App. 2012)). As this Court has explained:

> A trial court abuses its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). Under this standard, we will not substitute our judgment for the judgment of the trial court. *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)). The abuse of discretion standard "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,'" and therefore "'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010) (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

*Id.* at 373.

The TPPA sets forth a burden-shifting framework that must be applied by trial courts when disposing of TPPA petitions. First, "[t]he petitioning party has the burden of

making a prima facie case that a legal action against the petitioning party is based on, relates to, or is in response to that party's exercise of the right to free speech, right to petition, or right of association." Tenn. Code Ann. § 20-17-105(a). When deciding a TPPA petition, a trial court "may base its decision on supporting and opposing sworn affidavits stating admissible evidence upon which the liability or defense is based and on other admissible evidence presented by the parties." Tenn. Code Ann. § 20-17-105(d). In other words, any evidence considered by the trial court when analyzing the burden-shifting framework set forth in section 20-17-105(a)–(c) must be admissible. *See Charles v. McQueen*, No. M2021-00878-COA-R3-CV, 2022 WL 4490980, at *8 (Tenn. Ct. App. Sept. 28, 2022), *aff'd in part, rev'd in part on other grounds*, --- S.W.3d ----, 2024 WL 3286527 (Tenn. 2024).

The only evidence offered by PMC in support of its TPPA Petition was the TPPA Petition itself. The trial court found that the TPPA Petition was not admissible evidence because it was made upon Ms. Levielle's "information, knowledge and belief," and such averments "do not constitute facts as would be admissible in evidence." Generally, "a verified [pleading] 'has the force and effect of an affidavit[.]'" *Garner v. Coffee Cnty. Bank*, No. M2014-01956-COA-R3-CV, 2015 WL 6445601, at *3 (Tenn. Ct. App. Oct. 23, 2015) (citing *Muse v. First People's Bank of Tenn.*, No. E2005-02869-COA-R3-CV, 2007 WL 845893, at *7 (Tenn. Ct. App. Mar. 21, 2007)). "[F]actual averments in a verified pleading are competent evidence because a verified pleading is the functional equivalent of an affidavit." *Outpatient Diagnostic Ctr. v. Christian*, No. 01A01-9510-CV-00467, 1997 WL 210842, at *2 n.1 (Tenn. Ct. App. Apr. 30, 1997).

The TPPA Petition purports to be a verified pleading; however, Ms. Leveille's verification of the TPPA Petition is made upon "the best of [her] information, knowledge and *belief*." (Emphasis added). It is well settled that "'[a] Petitioner's own belief does not constitute "such facts as would be admissible in evidence" as required by Rule 56.0[6]' and cannot be considered as evidence." *Garner*, 2015 WL 6445601 at *4 (quoting *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498 (Tenn. 1978)). This is because "it is impossible to determine which allegations were founded upon personal knowledge, and which were merely statements based upon what [the affiant] 'believe[s]' to be true." *Id.* (quoting *Phung v. Case*, No. 03A01-9811-CV-00388, 1999 WL 544650, at *5 (Tenn. Ct. App. July 28, 1999)). "Belief, no matter how sincere, is not equivalent to knowledge." *Id.* at *4 (quoting *Keystone Ins. Co. v. Griffith*, 669 S.W.2d 364, 366 (Tenn. Ct. App. 1983)). *See Ohio Cas. Grp. of Ins. Cos. v. Forrest*, No. 03A01-9504-CV-00125, 1995 WL 455954, at *3 (Tenn. Ct. App. Aug. 2, 1995) ("[S]tatements made upon 'information and *belief*' are not acceptable as or legally sufficient to establish a fact . . . [instead, it] is merely a subjective statement of what the pleader believed to be true at the time." (emphasis added)).

Finally, PMC argues that this issue "could have been easily remedied by simply allowing Ms. Levielle to testify, but [the trial court] demurred." This is not consistent with the transcript of the evidence filed with this Court on appeal.[4]

Because PMC failed to verify that all of the averments in its TPPA Petition were made upon Ms. Levielle's personal knowledge, the TPPA Petition is not admissible evidence, and the trial court did not abuse its discretion in declining to consider it as such.

## B. PMC's Prima Facie Burden

The TPPA provides that "[a] response to the petition, including any opposing affidavits, may be served and filed by the opposing party no less than five (5) days before the hearing or, in the court's discretion, at any earlier time that the court deems proper." *See* Tenn. Code Ann. § 20-17-104(c). PMC insists that because the Tenants did not file a

---

[4] The following exchange took place between the trial court and PMC's counsel during the hearing on the TPPA Petition:

THE COURT: . . . do you have any evidence you want to present today?
MR. HIRSCHHORN: Your Honor, I have no evidence. . . .
* * *
THE COURT: No evidence. I'm telling you right now, call your first witness if you have any evidence.
MR. HIRSCHHORN: Your Honor, the statute doesn't require us to put on any evidence.
THE COURT: Okay. I'm saying, do you have any other evidence?
MR. HIRSCHHORN: No, Your Honor.
THE COURT: No, right? You're relying upon your affidavit?
MR. HIRSCHHORN: Correct, Your Honor.
THE COURT: Which is a verification?
MR. HIRSCHHORN: Right.
* * *
MR. HIRSCHHORN: He's the one who alleged that there was some speech made. We're saying that, per se, it was free speech. We didn't have a sworn affidavit, that's true. I can have my client come in and say the things that were in that, but the fact is --
THE COURT: Okay.
* * *
MR. HIRSCHHORN: . . . I can have my client here in a few minutes. She can come over and give the testimony, if Your Honor would like to hear testimony.
THE COURT: Do you want to give them an opportunity for them to have additional time as well? You want them to file their affidavit?
MR. HIRSCHHORN: Sure.
THE COURT: Well, we're going to do this today, Mr. Hirschhorn.
MR. HIRSCHHORN: Yes, sir.
THE COURT: I don't know -- anything else here? Anything else from either side?
[TENANTS' COUNSEL]: No, Your Honor.
THE COURT: Mr. Hirschhorn?
MR. HIRSCHHORN: I don't have anything else.

response to the TPPA Petition, the trial court was required to grant the petition by default, regardless of whether PMC presented admissible evidence in support of the petition or made a prima facie case that the TPPA applies. In support of its position, PMC repeatedly notes that the statements in its TPPA Petition are "uncontroverted" and references Tennessee Code Annotated section 20-17-104(c), which provides that the opposing party *may* respond to the petition no less than five days before the hearing. PMC's argument is contrary to section 20-17-104(c)'s plain language, and PMC does not develop any sort of argument as to why subsection (c) requires a trial court to grant an unopposed TPPA petition by default.

A respondent's failure to respond does not relieve the TPPA petitioner of their obligation to meet their initial burden. As set forth above, the first step of the TPPA burden-shifting framework requires PMC to make a prima facie case that the Tenants' Countercomplaint is "based on, relates to, or is in response to [PMC]'s exercise of the right to free speech, right to petition, or right of association." *See* Tenn. Code Ann. § 20-17-105(a). Notably, the burden only shifts to the responding party to establish a prima facie case for each essential element of its claim "[i]f the petitioning party meets [its prima facie] burden" first. *See* Tenn. Code Ann. § 20-17-105(b).

As our Highest Court recently explained:

> To establish a "prima facie" case under the TPPA, a party must present enough evidence to allow the jury to rule in his favor on that issue. This evidence may include "sworn affidavits stating admissible evidence" and "other admissible evidence." Tenn. Code Ann. § 20-17-105(d). As is the case when a court rules on a motion for summary judgment or motion for directed verdict, the court should view the evidence in the light most favorable to the party seeking to establish the prima facie case and disregard countervailing evidence. *See, e.g.*, *Griffis v. Davidson Cnty. Metro. Gov't*, 164 S.W.3d 267, 284 (Tenn. 2005) (summary judgment); *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995) (directed verdict).

*Charles*, 2024 WL 3286527, at *13. PMC's TPPA Petition was the only evidence offered by PMC. Because it did not contain any admissible evidence, PMC failed to satisfy its prima facie burden required by section 20-17-105(a). Therefore, the burden never shifted to the Tenants, and PMC was not entitled to a ruling in its favor by default.

**CONCLUSION**

The judgment of the Chancery Court for Knox County is hereby affirmed. The costs of this appeal are taxed to the appellant, PMC Squared, LLC, for which execution may issue if necessary. This case is remanded for further proceedings consistent with this Opinion.

_____
KRISTI M. DAVIS, JUDGE